Laurie Berke-Weiss
Jessica N. Tischler
Berke-Weiss & Pechman LLP
488 Madison Avenue, 11th Floor
New York, NY 10022
*Attorneys for Defendant Lelia Martin Wood-Smith*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KERRY E. CONNOLLY, ESQ.,                          :
                                                  :
                              Plaintiff,           :
                                                  :          **11 Civ. 8801 (DAB) (JCF)**
          -against-                                :
                                                  :
LELIA MARTIN WOOD-SMITH; and                      :
"JOHN DOES" 1 THROUGH 5,                           :
                                                  :          **ECF CASE**
                              Defendants.           :
------------------------------------------------------------X

## DEFENDANT LELIA MARTIN WOOD-SMITH'S MOTION TO DISMISS
## PLAINTIFF'S AMENDED COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT ..................................................................................................... 5

POINT I

    PLAINTIFF HAS NOT MET THE LEGAL STANDARD FOR A
    MOTION TO DISMISS UNDER FRCP 12(b)(6) OR FRCP 8(a) .................. 5

POINT II

    PLAINTIFF'S AMENDED COMPLAINT FAILS TO STATE A CLAIM
    UNDER THE STORED COMMUNICATIONS ACT AND SHOULD BE
    DISMISSED ................................................................................................. 7

    A. Plaintiff's Email Was Not Accessed While In "Electronic Storage"
       In An "Electronic Communication Facility," As Those Terms
       Are Statutorily Defined And, As Such, There Is no Viable SCA
       Claim ........................................................................................................ 8

    B. As Pled In The Amended Complaint, There Was No Violation Of
       The SCA Because exhibit-E Authorized Wood-Smith's Access ......... 11

POINT III

    PLAINTIFF'S DEFAMATION CLAIM MUST BE DISMISSED FOR
    FAILING TO STATE A CLAIM .................................................................. 12

    A. Plaintiff Cannot Show That Wood-Smith's Purported Email Was
       Defamatory ............................................................................................. 13

    B. Plaintiff Cannot Show Defamation *Per Se* And Has Not Pled Special
       Damages ................................................................................................. 15

    C. Wood-Smith's Statement Is Protected By Qualified Privilege ........... 17

POINT IV

    PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE WITH
    PROSPECTIVE BUSINESS ADVANTAGE MUST BE DISMISSED FOR
    FAILURE TO STATE A CLAIM ................................................................. 22

CONCLUSION ................................................................................................. 25

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE**

*Advanced Global Technology LLC v. Sirius Satellite Radio, Inc.,*
15 Misc.3d 776 (2007) ................................................................................................22

*Amron v. Morgan Stanley Inv. Advisors Inc.,* 464 F.3d 338 (2d Cir. 2006) ...............................6

*Armstrong v. Simon & Schuster, Inc.,* 85 N.Y.2d 373 (1995) .......................................................16

*Aronson v. Wiersma,* 665 N.Y.2d 592 (1985) ..............................................................................15

*Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) ...................................................................................5

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
459 U.S. 519 (1983) ..................................................................................................6

*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87 (2d Cir. 2007) ........................................6

*Becker v. Adams Drug Co.,* 819 F.2d 32 (2d Cir. 1987) ...............................................................7

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ..................................................................5

*Berwick v. New World Network Intern., Ltd.,* 2007 U.S. Dist. LEXIS 22995
(S.D.N.Y. 2007) .........................................................................................................13

*Bohach v. City of Reno,* 932 F. Supp. 1332 (D. Nev. 1996) .........................................................12

*Borninski v. Williamson,* No. 3:02-CV-1014-L, 2005 U.S. Dist. LEXIS 9401
(N.D. Tex. May 17, 2005) ..........................................................................................10

*Bowes v. Magna Concepts,* 561 N.Y.S. 2d 16 (1st Dep't 1990) ..................................................16

*Brooks v. Anderson,* 18 Misc.3d 1109 (A)
(Sup. Ct., Bronx County 2007) ..................................................................................21

*Celle v. Filipino Reporter Enterprises Inc.,* 209 F.3d 163 (2d Cir. 2000) ..............................14, 16

*Chandok v. Klessig,* 632 F.3d 803 (2d Cir. 2011) ......................................................................18

*Council on American-Islamic Relations Action Network, Inc. v. Gaubatz,*
793 F. Supp. 2d 311 (D.D.C. 2011) .............................................................................8

*Dellefave v. Access Temps.,* 2001 U.S. Dist. LEXIS 97
(S.D.N.Y. Jan. 10, 2001) ...........................................................................................17

*DiFolco v. MSNBC Cable L.L.C.,* 2011 U.S. Dist. LEXIS 131506
(S.D.N.Y. Nov. 9, 2011) .............................................................................................16

*Doe v. White Plains Hosp. Med. Ctr.*, 2011 U.S. Dist. LEXIS 76076
(S.D.N.Y. July 8, 2011)................................................................................14, 15

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005) ........................................................6

*Elec. Comm. Corp. v. Toshiba Am. Consumer Prods., Inc.*,
129 F.3d 240 (2d Cir. 1997) .............................................................................5,11

*Evans v. Artek Sys. Corp.*, 715 F.2d 788 (2d Cir. 1983) .............................................24

*Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107 (3d Cir. 2003) ..............................11

*Fraser v. Nationwide Mut. Ins. Co.*, 135 F. Supp. 2d 623 (E.D. Pa. 2001)................10

*Garrison v. Louisiana*, 379 U.S. 64 (1964) ...............................................................20

*Gill v. Pathmark Stores, Inc.*, 237 A.D.2d 563 (2d Dep't 1997)................................12

*Greene v. Greene*, 47 N.Y.2d 447 (1979)...................................................................23

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
50 N.Y.2d 183 (1990) .......................................................................................22

*Kforce, Inc. v. Alden Pers., Inc.*, 288 F. Supp. 2d 513 (S.D.N.Y. 2003) ....................15

*KLA-Tencor Corp. v. Murphy*, 717 F. Supp. 2d 895 (N.D. Cal. 2010)....................11

*Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92 (2d Cir. 2000)............................18

*Lee v. HealthFirst, Inc.*, No. 04 Civ. 8787, 2006 U.S. Dist. LEXIS 2601
(S.D.N.Y. Jan. 25, 2006).....................................................................................6

*Liberman v. Gelstein*, 80 N.Y.2d 429 (1992).......................................................19, 20

*Lincoln First Bank v. Siegel*, 60 A.D.2d 270
(N.Y. App. Div. 4th Dep't 1977)................................................................16

*Matherson v. Marchello*, 100 A.D.2d 233 (2d Dep't 1984) ..................................16, 17

*Matter of Metropolitan Transp. Auth.*, 222 A.D.2d 340 N.Y.S.2d 604 (1995) ..........24

*Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138 (2d Cir. 2001) ..........................................18

*Murray v. Metro. Life Ins. Co.*, 583 F.3d 173 (2d Cir. 2009).....................................24

*Muzio v. Inc. Vill. Of Bayville*, CV-99-8605, 2006 U.S. Dist. LEXIS 1886
(E.D.N.Y. Jan. 3, 2006)....................................................................................12

*NBT Bancorp, Inc. v. Fleet/Norstar Fin. Group*, 87 N.Y.2d 614 (1996) .....................................22

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) .................................................20

*Orenstein v. Figel*, 677 F. Supp. 2d 706 (S.D.N.Y. 2009) .......................................18, 19

*Ott v. Automatic Connector, Inc.*, 193 A.D.2d 657 (1st Dep't 1991) .........................................15

*Papasan v. Allain*, 478 U.S. 265, 286 (1986).................................................................6

*Paycom Billing Servs. v. Mastercard Int'l, Inc.*, 467 F.3d 283 (2d Cir. 2006)..............................6

*Pietrylo v. Hillstone Restaurant Group*, No. 06-cv-05754, 2008
    U.S. Dist. LEXIS 108834 (D.N.J. July 25, 2008) .........................................12

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 759 F. Supp. 2d 417
    (S.D.N.Y. 2010)...........................................................................................8

*Silverman v. Clark*, 822 N.Y.S.2d 9 (1st Dep't 2006)..................................................18

*Steinhilber v. Alphonse*, 68 N.Y.2d 283 (1986).........................................................14

*Stern v. Cosby*, 645 F. Supp. 2d 286 (S.D.N.Y. 2009)................................................15

*Stukuls v. State of New York*, 42 N.Y.2d 272 (1977)...................................................19

*Thai v. Cayre Grp.*, 726 F. Supp. 2d 323 (S.D.N.Y. 2010) ..........................................13

*Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004)..........................................11, 12

*Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 2008 NY Slip Op 6894
    (N.Y. App. Div. 1st Dep't 2008)................................................................23, 25

*United States v. Weaver*, 636 F. Supp. 2d 769 (C.D. Ill. 2009)..................................11

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004) ......................................................6

**STATUTES**

18 U.S.C. § 2701 ................................................................................................ *passim*

18 U.S.C. § 2510(17).................................................................................................9

Civ. Prac. L. & R. 3016.........................................................................................13

Code of Professional Responsibility DR 5-105 (22 NYCRR 1200.24) ...............................25

Fed. R. Civ. P. 8(a)............................................................................................ *passim*

FED. R. CIV. P. 12(b)(6) ............................................................................................ *passim*

RESTATEMENT 2D OF TORTS §768, cmt. e. ...........................................................................22

NEW YORK RULES OF PROF'L CONDUCT R. 1.7 (2012)..........................................................23, 24

NEW YORK RULES OF PROF'L CONDUCT R. 1.9 (2012)..........................................................23, 24

NEW YORK RULES OF PROF'L CONDUCT R. 1.13 (2012)........................................................23, 24

Laurie Berke-Weiss
Jessica N. Tischler
Berke-Weiss & Pechman LLP
488 Madison Avenue, 11th Floor
New York, NY 10022
*Attorneys for Defendant Lelia Martin Wood-Smith*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | | |
|---|---|---|
| KERRY E. CONNOLLY, ESQ., | : | **11 Civ. 8801 (DAB) (JCF)** |
| | : | |
| Plaintiff, | : | **DEFENDANT LELIA MARTIN** |
| | : | **WOOD-SMITH'S MOTION** |
| -against- | : | **TO DISMISS PLAINTIFF'S** |
| | : | **AMENDED COMPLAINT** |
| LELIA MARTIN WOOD-SMITH, and | : | |
| "JOHN DOES" 1 THROUGH 5, | : | |
| | : | **ECF CASE** |
| Defendants. | : | |

------------------------------------------------------------X

This Memorandum of Law is submitted by defendant Lelia Martin Wood-Smith

("Wood-Smith" or "defendant") in support of her Motion to Dismiss Plaintiff's

Amended Complaint in the above-captioned action, pursuant to Rules 8(a) and 12(b)(6)

of the Federal Rules of Civil Procedure ("FRCP").

## PRELIMINARY STATEMENT

Plaintiff Kerry E. Connolly, Esq. ("Connolly"), an attorney admitted to practice in

this District, filed this action *pro se* on December 2, 2011 (the "Complaint"), asserting

claims against Wood-Smith claiming violations of the Stored Communications Act, 18

U.S.C. §§ 2701, *et seq.* (the "SCA") and for defamation *per se*.  Wood-Smith moved to

dismiss the Complaint pursuant to FRCP Rules 8(a) and 12(b)(6) on January 3, 2012.  On

January 23, 2012, plaintiff, now represented by counsel, filed an Amended Complaint

which realleged her defamation and SCA claims, and added a third cause of action for

tortious interference with prospective business advantage.  The Amended Complaint

also added as additional defendants "John Does 1 through 5." Plaintiff alleges that

Wood-Smith and the John Does illegally accessed emails between plaintiff, an attorney, and her purported clients Claudia Stone, Georgia Jaksic, Alex Yudzon, and Nguyen Ducmanh. Plaintiff also alleges that Wood-Smith, an agent and fiduciary of plaintiff's former client, Allan Stone Galleries, Inc. ("ASGI"), defamed plaintiff by stating that copyright advice plaintiff provided to ASGI "was incorrect" and "had cost the Trust hundreds of thousands of dollars." Amended Comp., ¶ 38. Plaintiff relies on the same alleged statements by Wood-Smith to assert that Wood-Smith interfered with prospective business relationships Connolly had with ASGI and members of the Stone family. For purposes of this motion only, plaintiff's factual allegations are taken as true.

Wood-Smith now moves to dismiss plaintiff's claims against her pursuant to FRCP Rules 12(b)(6) and 8(a) because plaintiff's Complaint fails to allege facts sufficient to support a claim under the SCA or for defamation, and for lack of subject matter jurisdiction over plaintiff's state law claim. Moreover, plaintiff's defamation claim is barred by virtue of Wood-Smith's role as a Trustee of the Clare Chester Stone Marital Trust (named in the Complaint as the "C.S. Marital Trust," and hereinafter referred to as the "Trust"), which owns and operates ASGI and which, in concert with the circumstances surrounding the alleged context and manner of the communication, as alleged, affords a qualified privilege for the communication.

As stated in Exhibit A to the Complaint, the Trust was created by the will of Allan Stone, a well-known art collector, for the benefit of his wife during her lifetime and, upon her death, for the benefit of the decedent's six daughters, Allison Stabile, Claudia Barry Stone, Jeremy Stone, Heather Stone, Jessie Stone, and Olympia Stone. Amended Comp., Exhibit A, ¶¶ 4-7. As acknowledged in Exhibit A, Wood-Smith has a fiduciary duty as a trustee of the Trust, to preserve the value of trust assets for its beneficiaries. Amended Comp., Exhibit A, ¶ 24. Therefore, it is self-evident that Wood-

2

Smith has a duty to disclose to the Trust's beneficiaries any concerns she may have as to whether to rely on legal advice rendered to ASGI, such as that which was provided by the Plaintiff. Amended Comp., Exhibit A, ¶ 54.

Rather than seeking redress for any actual wrongs, plaintiff's Amended Complaint, rife with defamatory statements about defendant, is on its face a stark abuse of the absolute privilege afforded to statements made in judicial proceedings in New York, and merely extends to federal court a fee dispute brought by plaintiff in the New York courts. Plaintiff purports to sue Wood-Smith individually for actions which, as alleged, were taken in her official capacity as the Independent Trustee for the Trust, and as an officer of ASGI – plaintiff's own client. Plaintiff has not corrected this error upon filing her Amended Complaint. Evidence of plaintiff's suspect motivation in bringing this action is the inclusion of completely irrelevant allegations about the Trust's Surrogate's Court litigation which is used to bolster plaintiff's spurious claims. Amended Comp. ¶ 22. This is driven home by two exhibits attached to the Amended Complaint: Exhibit A, a petition for the removal of Wood-Smith as Independent Trustee in a proceeding pending in Surrogate's Court, Westchester County, and Exhibit B, a complaint against ASGI filed by plaintiff in New York City Civil Court (the "Civil Court Action") to recover disputed attorneys' fees sought for the legal advice which plaintiff has now made the subject of her defamation action, neither of which directly concerns plaintiff's allegations.

Moreover, based on its timing, it appears that plaintiff's December 2, 2011 initiation of this lawsuit -- rife with scurrilous accusations and negative assertions about Wood-Smith's character and the performance of her duties as an agent of ASGI -- is a vindictive response to ASGI's refusal to pay her attorney's fees and defendant's stated intention to file an answer with affirmative defenses sounding in attorney malpractice

3

in the Civil Court Action, which plaintiff learned of in a December 1, 2011 telephone conversation with ASGI's counsel. Berke-Weiss Decl., ¶ 3.   A copy of the First Amended Verified Answer and Defendant's Counterclaims filed by ASGI in the Civil Court Action is attached to the Declaration of Laurie Berke-Weiss ("Berke-Weiss Decl.") as Exhibit 1 for the court's information.[1]

Moreover, the pleadings amply demonstrate plaintiff's true motivation in bringing this lawsuit against defendant personally, rather than against ASGI or the Trust (or at all) -- her animus toward defendant for purely personal reasons.   Plaintiff avers a thirty-year friendship with Claudia Stone, pleading that she was terminated from her position as Gallery Director of the Allan Stone Gallery by defendant who, according to plaintiff, "controls ...[the] ...finances and directs ...[the]...business affairs" of the Trust as its Independent Trustee.   Amended Comp., ¶¶ 14, 18, 34.   Plaintiff complains that "Wood-Smith and Claudia Stone became openly antagonistic" and that "[a]fter Claudia Stone expressed her opposition to Wood-Smith's acts, Claudia Stone's employment with the Gallery was terminated." *Id.*, ¶¶ 21, 34.   Plaintiff also pleads that "given her longstanding personal relationship with Claudia Stone ..." she told the Trustees in March 2011 that she "had been put in a position of conflicting loyalties and was therefore resigning as counsel to the Gallery."   Amended Comp., Exh. B, ¶ 22.   As such, the complaint is a thinly veiled attempt to defame defendant and support Stone.

---

[1] ASGI's First Amended Answer, including counterclaims sounding in malpractice, verified by Wood-Smith (the "First Amended Answer"), is attached for background and completeness, as plaintiff has inexplicably included her complaint in the Civil Court Action as an exhibit in this case. *See* Exhibit B.   Wood-Smith does not, however, rely on the fact or contents of the Amended Answer as grounds for this motion, and its inclusion should not be construed as converting this Motion to Dismiss into a motion for summary judgment. *See Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999) (When "the court simply refers to supplementary materials, but does not rely on them or use them as a basis for its decision, the 12(b)(6) motion is not converted into a motion for summary judgment.").

Further, the fact that plaintiff said she resigned in support of her friend underscores the underlying conflict of interest inherent in plaintiff's concurrent representation of Stone and ASGI, arguably demonstrating a breach of the duty she owed to ASGI as a client. Despite alleging that Wood-Smith obtained privileged attorney client e-mails between plaintiff and Stone, plaintiff fails to allege that Wood-Smith and, by extension, ASGI -- whose shares were vested in the Trust (Amended Comp., Exhibit B, ¶ 9) -- ever knew that plaintiff was representing Stone in connection with her termination as an employee of ASGI or otherwise. Amended Comp., ¶ 53.

## ARGUMENT

### POINT I

### PLAINTIFF HAS NOT MET THE LEGAL STANDARD FOR A MOTION TO DISMISS UNDER FRCP 12(b)(6) OR FRCP 8(a)

A complaint may be dismissed pursuant to Federal Rule 12(b)(6) where it fails to include facts sufficient "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (May 18, 2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court articulated a "plausibility" standard, stating that "[w]here a complaint pleads facts that are merely consistent with a Defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal, supra* (internal quotation marks and citation omitted). As such, the facts set forth in the complaint must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557. A party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions…." *Id.* at 555 (internal quotation marks and alterations omitted). Thus, under *Iqbal*, unless a plaintiff's well-pleaded allegations have "nudged [her] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

These pleading standards must be read together with the familiar Rule 12(b)(6) admonition that courts may neither (i) "'assume that the [Plaintiff] can prove facts that [he] has not alleged,'" *Elec. Comm. Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 243 (2d Cir. 1997) (*quoting Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)) (alteration in original), nor (ii) "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citation omitted).   Here, the Amended Complaint fails on both counts.

A complaint bearing only conclusory statements, like that which plaintiff has filed, cannot "substitute for minimally sufficient factual allegations." *Paycom Billing Servs. v. Mastercard Int'l, Inc.*, 467 F.3d 283, 289 (2d Cir. 2006) (internal citation omitted); *see also Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 343 (2d Cir. 2006) (noting that "bald assertions and conclusions of law will not suffice" to defeat a motion to dismiss) (internal citation omitted).   Rather, this Court has held that "to survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Communications Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (*quoting Twombly*, 550 U.S. at 555).   A complaint must give the defendant "fair notice of what the...claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted).   "Fair notice" is defined as "that which will enable the adverse party to answer and prepare for trial." *Lee v. HealthFirst, Inc.*, No. 04 Civ. 8787, 2006 U.S. Dist. LEXIS 2601 (S.D.N.Y. Jan. 25, 2006) (*quoting Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004)).   Plaintiff's claims, padded with irrelevant yet prejudicial slurs against Wood-Smith, fall far short of meeting this standard.

Rule 8(a)(2), in particular, requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). Such a statement must "give the Defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). Where a plaintiff fails to supply sufficient facts to support the claims in the complaint, a court may dismiss it as failing to comply with Rule 8(a). *Becker v. Adams Drug Co.*, 819 F.2d 32, 33 (2d Cir. 1987) (dismissing the complaint because of plaintiff's failure to supply "any facts supporting his allegation of age discrimination.").

## POINT II

### PLAINTIFF'S AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE STORED COMMUNICATIONS ACT AND SHOULD BE DISMISSED

The instant Amended Complaint fails to meet the FRCP 12(b)(6) standard with respect to plaintiff's claim under the SCA and should be dismissed. The Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*, provides for liability if a defendant "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C. § 2701(a)(1) and (2).

Plaintiff's SCA claims revolve around attorney-client communications plaintiff allegedly sent to the employee email accounts of several ASGI employees who plaintiff claims to have represented. Amended Comp., ¶¶ 53-56. ASGI's employee email services were provided by a company known as "exhibit-E," the "provider and administrator of the email service" which was "hired to design the Gallery's website and to provide web hosting and email services." Amended Comp., ¶ 49. Plaintiff alleged that, "as part of its service of providing email access to the Gallery employees, and as an incident to the transmission of the emails to Gallery employees, exhibit-E

7

stored the Gallery emails on its server." Amended Comp., ¶ 52. Plaintiff claims to have

had a reasonable expectation of privacy in her communications through ASGI email

because ASGI did not have a policy of monitoring employee emails and because only

exhibit-E had access to employee email passwords. Amended Comp.,  ¶¶ 51, 56.

Plaintiff alleges defendants requested ASGI employee emails from exhibit-E and, after

receiving an indemnification from ASGI, exhibit-E provided those emails to ASGI for

review. Amended Comp., ¶¶ 59-64. At no time did "plaintiff nor any of the Gallery's

employees consent[] to or otherwise authorize[] this access to the emails between

plaintiff and the Gallery employees." Amended Comp., ¶ 65. Even if true, however,

these allegations are insufficient to make out a claim for violation of the SCA.

A.   **Plaintiff's Email Was Not Accessed While In "Electronic Storage" In An "Electronic Communication Facility," As Those Terms Are Statutorily Defined And, As Such, There Is No Viable SCA Claim**

The SCA, which is a subpart of the Electronic Communications Privacy Act

("ECPA"), makes it unlawful to access a communication without authority while it is in

"electronic storage." 18 U.S.C. § 2701(a). For SCA liability to arise, plaintiff must show

that Wood-Smith "accessed Plaintiffs' computer servers and that those servers were the

physical means through which a service which provides to users thereof the ability to

send or receive wire or electronic communications was provided." *Council on American-*

*Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 336 (D.D.C. 2011).

Plaintiff has not made the requisite allegations. Section 2701 of the SCA creates liability

in instances in which an individual uses someone's email password to access their email

account. *See Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 759 F. Supp.2d

417 (S.D.N.Y. 2010) (finding SCA violation on counterclaim where plaintiff accessed

defendant's email using password stored on computer). It does not, however, create

liability for accessing a print-out of an email or for accessing emails that have been

8

downloaded to a computer because, under the circumstances alleged, there was no access to the electronic communication facility, *i.e.* access to exhibit-E's servers. Although plaintiff claims that Wood-Smith had discussions with exhibit-E's attorney regarding ASGI employees' email passwords, she does not allege that exhibit-E ever provided those passwords and, therefore, that Wood-Smith accessed the communication facility. Amended Comp., ¶60. Rather, plaintiff alleges "exhibit-E turned over the Gallery emails it maintained on its server to Defendants Wood-Smith and John Does 1 through 5, who proceeded to review the contents of those emails." Amended Comp., ¶ 64. As alleged by plaintiff, it was the contents of the accounts that were provided, not access to the accounts. Accordingly, plaintiff pleads no facts which indicate that Wood-Smith ever "logged on" to emails stored on exhibit-E's server, and relies instead only on a conclusory allegation in plaintiff's Third Cause of Action stating that defendants "intentionally accessed exhibit-E's server." Amended Comp., ¶ 81.

Furthermore, even were the Court to infer from the Amended Complaint that Wood-Smith accessed an electronic communications facility, plaintiff's claim must still fail as she has not adequately pled that the emails were in "electronic storage," which has a narrow, statutorily defined meaning and does not simply mean storage of communications by electronic means. The ECPA defines "electronic storage" as:

> (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and
>
> (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication....

18 U.S.C. § 2510(17)(A) and (B).

Plaintiff's SCA claim is based on the definition of electronic storage found in Subsection A as information stored temporarily incident to transmission. *See* Amended

Comp., ¶ 52 ("As part of its service of providing email access to the Gallery employees, and as an incident to the transmission of the emails to Gallery employees, exhibit-E stored the Gallery emails on its server."); *see also* Amended Comp., ¶ 81 ("Defendants Wood-Smith and John Does 1 through 5 intentionally accessed exhibit-E's server, on which exhibit-E stored the Gallery emails as an incident to the transmission of these emails to Gallery employees."). These allegations fail to meet the standard for liability under the SCA.

Plaintiff misapprehends the statute, because Subsection A does not apply to emails that have been transmitted to their final destination, *i.e.*, emails which have been read by the recipient. *See Fraser v. Nationwide Mut. Ins. Co.*, 135 F. Supp. 2d 623, 635-38 (E.D. Pa. 2001). *See also Borninski v. Williamson*, No. 3:02-CV-1014-L, 2005 U.S. Dist. LEXIS 9401 (N.D. Tex. May 17, 2005) ("As the electronic communications had ended, Borninski's company-issued computer hard drive would not qualify as 'temporary [or] intermediate storage...' nor would it qualify as 'storage...by an electronic communication service for purposes of backup protection...'"). Plaintiff does not assert that the emails in question were still in transmission to her various clients or that defendants had accessed the emails before they had been received. To the contrary, a court could reasonably infer from plaintiff's statement, "Claudia Stone and Plaintiff sent emails to each other," that Claudia had received the emails and responded in kind. Amended Comp., ¶ 54. The same is likely true for any emails plaintiff sent to ASGI's employees in the context of any attorney-client relationship she had over the years.

Plaintiff has not pled any facts to the effect that the emails were stored for purposes of backup protection under Subsection B, plaintiff thereby ignoring the technical requirements of the SCA and failing to state a viable claim. Neither are there any facts in the Amended Complaint which could lead to such an inference. The mere

allegation that the emails were stored on exhibit-E's server is not in itself enough to show that the emails are in "electronic storage" for backup protection rather than merely in "storage." *See United States v. Weaver*, 636 F. Supp. 2d 769, 772 (C.D. Ill. 2009) (observing that "users of web-based email systems...default to saving their messages only on the remote system"); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1070 (9th Cir. 2004) ("A remote computing service might be the only place a user stores his messages; in that case the messages are not stored for backup purposes."); *KLA-Tencor Corp. v. Murphy*, 717 F. Supp. 2d 895, 905 (N.D. Cal. 2010) (finding that system which stores emails for purposes of synchronizing accounts among various computers is distinct from server which merely stores emails for purposes of backup protection). As a court may not "'assume that the [Plaintiff] can prove facts that [he] has not alleged,'" *Elec. Comm. Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 243 (2d Cir. 1997), plaintiff's claim is insufficient to support a theory that the emails were in "backup storage" as defined by the SCA.

**B.    As Pled In The Amended Complaint, There Was No Violation Of The SCA Because exhibit-E Authorized Wood-Smith's Access**

Finally, because plaintiff has pled that access to exhibit-E's server, if any, by Wood-Smith was taken with exhibit-E's authorization, there can be no finding of liability under the SCA. An express defense exists under 18 U.S.C. § 2701(c)(1) where the conduct was authorized by the person or entity providing the electronic communication service. 18 U.S.C. § 2701(c)(1) ("Subsection (a) of this section does not apply with respect to conduct authorized (1) by the person or entity providing a wire or electronic communications service..."). While the Amended Complaint emphasizes that neither plaintiff nor ASGI's employees permitted exhibit-E to grant authorization to Wood-Smith, such assertions are irrelevant because authorization may be granted by

11

either the entity providing an electronic communications service **or** by a user of that service. *Id. See Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107 (3d Cir. 2003) ("18 U.S.C. § 2701(c)(1) excepts from Title II any seizures of e-mail authorized 'by the person or entity providing a wire or electronic communications service.'") (citing *Bohach v. City of Reno*, 932 F. Supp. 1232, 1236 (D. Nev. 1996) ("service providers [may] do as they wish when it comes to accessing communications in electronic storage."). This authorization provides a complete defense to plaintiff's claims against Wood-Smith.

Plaintiff does not allege that defendants obtained exhibit-E's authorization by means of coercion or improper legal compulsion, as such Wood-Smith is entitled to the authorization defense provided under § 2701(c)(1). *See, e.g., Theofel v. Farey-Jones*, 359 F.3d 1066, 1073 (9th Cir. 2004) (en banc) (denying authorization defense where procured by serving invalid subpoena on internet service provider and likening subpoena to a trespasser who "procures consent by exploiting a known mistake that relates to the essential nature of his access."); *Pietrylo v. Hillstone Restaurant Group*, No. 06-cv-05754, 2008 U.S. Dist. LEXIS 108834, at *12-13 (D.N.J. July 25, 2008) (noting if "consent was only given under duress, then the Defendants were not 'authorized' under the terms of the statute."). As plaintiff does not accuse defendants of using threats or coercion to obtain exhibit-E's authorization, there was no violation of the SCA.

## POINT III

### PLAINTIFF'S DEFAMATION CLAIM MUST BE DISMISSED FOR FAILING TO STATE A CLAIM

Because plaintiff has brought her New York common law claim for defamation in federal court, this claim is also subject to the pleading requirements of FRCP 8(a) and the adequacy of the pleadings must be analyzed on a motion pursuant to FRCP 12(b)(6)

under the standard set forth in *Iqbal* and *Twombly*, discussed in Point I, *infra*.[2]  *See Muzio v. Inc. Vill. of Bayville*, CV-99-8605, 2006 U.S. Dist. LEXIS 1886 (E.D.N.Y. Jan. 3, 2006).

In order to bring a claim for defamation in New York, "the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Thai v. Cayre Grp.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010).  Here, however, all plaintiff pleads as to Wood-Smith's allegedly defamatory statement the bald assertion that Wood-Smith sent an email[3] stating that "Plaintiff's ongoing advice on copyright 'was incorrect' and 'had cost the Trust hundreds of thousands of dollars.'" Amended Comp., ¶ 38.  As such, the facts which plaintiff does allege in paragraph 38 are insufficient to "nudge" plaintiff's claims from "conceivable to plausible," *Twombly*, 550 U.S. at 570, and therefore plaintiff's defamation claim should be dismissed.

## A.   Plaintiff Cannot Show That Wood-Smith's Purported Email Was Defamatory

"As a threshold matter, a court must determine whether a particular statement can reasonably constitute defamation." *Berwick v. New World Network Intern., Ltd.*, 2007 U.S. Dist. LEXIS 22995, at *3 (S.D.N.Y. 2007) (at the motion to dismiss stage the court

---

[2] Defamation, a New York common law claim, is typically subjected to a heightened pleading standard under Rule 3016 of the New York Civil Practice Law and Rules, which requires that, in an action for libel or slander, "the particular words complained of shall be set forth in the complaint." CPLR R. 3016.  Plaintiff has failed to plead this specific language, which would be clear grounds for dismissal in state court. *See Gill v. Pathmark Stores, Inc.*, 237 A.D.2d 563, 564 (2d Dep't 1997) ("It is well-settled law that a cause of action sounding in defamation which fails to comply with the special pleading requirements contained in CPLR 3016(a) that the complaint set forth 'the particular words complained of', mandates dismissal.").

[3] Notably, plaintiff has not attached the alleged email, which she claims was brought to her attention by Claudia Stone.  Notably, Stone herself is not alleged to have received the email and must have heard of its contents from yet another party.  Although the existence of this email is taken as true for purposes of this motion, defendant emphatically disputes its existence.

must determine as a matter of law whether the statements at issue are susceptible to a defamatory meaning). The New York Court of Appeals has defined defamation as:

> [A] statement that threatens to expose an individual "to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or ... induce[s] an evil opinion of one in the minds of right-thinking persons, and...deprives one of...confidence and friendly intercourse in society."

*Doe v. White Plains Hosp. Med. Ctr.*, 2011 U.S. Dist. LEXIS 76076, at *6 (S.D.N.Y. July 8, 2011), *quoting Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 178 (2d Cir. 2000). On their face, plaintiff's allegations of defamation fall far short of this well-established definition.

The statement, asserting that Wood-Smith's email said plaintiff's copyright advice was incorrect, costing the Trust hundreds of thousands of dollars, is, as a matter of law, a protected expression of opinion. *Celle*, 209 F.3d at 176. The New York State Constitution provides absolute protection for opinions, severely undercutting any claim of defamation resting on allegations which on their face can be classified as protected "pure opinion." *Id. See also Doe*, 2011 U.S. Dist. LEXIS 76076, at *7 ("If the statements are 'pure opinion,' then they are not defamatory as a matter of law even if they are false and libelous."); *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986) (Pure opinion is defined as a "statement of opinion which is accompanied by a recitation of the facts upon which it is based."). Tellingly, plaintiff has failed to attach a copy of the alleged email[4] so that Wood-Smith's statement may be viewed in context to evaluate whether, in fact, a defamatory meaning could attach to the statement as a whole, thus, her pleadings cannot plausibly argue this statement is an expression of fact rather than opinion.

---

[4] Defendant notes that plaintiff has attached three other exhibits bearing far less relevance to her claims than the alleged email, which is pivotal to plaintiff's claim and has been conspicuously omitted.

Arguably, Wood-Smith's critique of plaintiff's legal services – performed as attorney for ASGI, for which Wood-Smith served as an officer – is akin to an employer's evaluation of an employee's job performance, where courts have often held that "[a]n employer has the right to assess an employee's performance on the job without judicial interference." *Doe*, 2011 U.S. Dist. LEXIS 76076 at *9 (*quoting Ott v. Automatic Connector, Inc.*, 193 A.D.2d 657, 658 (1st Dep't 1991)); *see also Aronson v. Wiersma*, 665 N.Y.2d 592, 593 (1985) (holding statements regarding plaintiff's unsatisfactory job performance not defamatory *per se*). By the same token, holding that a client risks liability for defamation when questioning the accuracy, efficacy, or validity of legal advice obtained through engaged counsel, would create a legal framework by which clients must weigh the risk of losing their rights in an underlying action or face defamation charges brought by their own attorney for questioning their attorney's skill and advice.[5]

## B. Plaintiff Cannot Show Defamation *Per Se* And Has Not Pled Special Damages

A necessary element of a claim for defamation under New York law is a showing either that the defamatory statement constitutes defamation *per se* or that the plaintiff suffered special damages. *Kforce, Inc. v. Alden Pers., Inc.*, 288 F. Supp. 2d 513, 516 (S.D.N.Y. 2003). A *per se* defamatory statement relieves the plaintiff of the need to plead special damages because "certain statements are considered so inflammatory and offensive that the law presumes the statements to have caused damage." *Stern v. Cosby*, 645 F. Supp. 2d 286, 289 (S.D.N.Y. 2009). New York recognizes as defamation *per se*:

> [S]tatements that tend "to disparage a person in the way of [her] office, profession or trade." The New York Court of Appeals has circumscribed this category as "limited to defamation of a kind incompatible with the proper conduct

---

[5] Such a scenario seems implausible at best, particularly since it could vitiate the attorney-client privilege by allowing the attorney to bring a claim against her client for merely criticizing the attorney's legal advice.

15

> of the business, trade, profession or office" that "must be
> made with reference to a matter of significance and
> importance for that purpose, rather than a more general
> reflection upon the plaintiff's character or qualities."

*DiFolco v. MSNBC Cable L.L.C.*, 2011 U.S. Dist. LEXIS 131506, at *34-35 (S.D.N.Y. Nov. 9,

2011) (internal citations omitted). Here, plaintiff's argument that a statement that

"Plaintiff's ongoing advice on copyright 'was incorrect' and 'had cost the Trust

hundreds of thousands of dollars,'" Amended Comp., ¶ 38, was defamation *per se*, fails

to meet the requisite pleading standard.

Although defendant disputes that a client's statement to the effect that an

attorney gave bad advice is an actionable statement — much less defamation *per se* --

even were a court to find the alleged statement to be defamatory, New York's "single

instance" exception would defeat this claim because "a statement charging another with

a single dereliction in connection with his or her trade, occupation or profession does

not necessarily charge that party with general incompetence, ignorance or lack of skill

and is not deemed actionable unless special damages are pleaded and shown." *Bowes v.*

*Magna Concepts*, 561 N.Y.S. 2d 16, 17 (1st Dep't 1990). *See also Celle*, 209 F.3d at 180 ("The

New York single instance rule ... 'applies where a publication charges a professional

person with a single error in judgment, which the law presumes not to injure

reputation.'") (quoting *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373 (1995)). This

exception holds true because plaintiff does not allege that Wood-Smith made a false

assertion of fact about plaintiff's ability to practice law. She merely accuses Wood-

Smith of saying that plaintiff gave incorrect advice on a particular matter. As such,

plaintiff must have pled special damages to maintain her defamation claim and she did

not do so in either her original or amended complaint.

Absent defamation *per se*, plaintiffs who assert defamation claims must satisfy the immutable requirement that "[s]pecial damages [be pled and] consist of the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation." *Matherson v. Marchello*, 100 A.D.2d 233, 235 (2d Dep't 1984). Moreover, special damages "must be fully and accurately identified 'with sufficient particularity to identify actual losses.'" *Id.*, quoting *Lincoln First Bank v. Siegel*, 60 A.D.2d 270, 280 (N.Y. App. Div. 4th Dep't 1977). Plaintiff's only allegations of damages arising out of defamation are that her "reputation as a competent attorney has been damaged" and that "Plaintiff has suffered special damages in the form of lost income, as well as extreme emotional distress." Amended Comp., ¶¶46, 71. Lost income does not qualify as special damages. *See Dellefave v. Access Temps.*, 2001 U.S. Dist. LEXIS 97 (S.D.N.Y. Jan. 10, 2001). Loss of reputation is by definition a required element of any defamation claim, but it does not qualify as special damages. However, even if by loss of reputation plaintiff means to plead loss of business, "the persons who ceased to be customers must be named and the losses itemized." *Matherson*, 100 A.D.2d at 235. Likewise, as plaintiff has not pled any economic or pecuniary harm from her "extreme emotional distress," this too is insufficient to meet the pleading requirements. In sum, because the Amended Complaint is devoid of any allegations of specific economic or pecuniary losses arising from Wood-Smith's alleged statement, the defamation allegation is unsustainable and must be dismissed.

C.     **Wood-Smith's Statement Is Protected By Qualified Privilege**

Even if the Court should find that plaintiff has stated a claim for defamation and has properly alleged either defamation *per se* or special damages, plaintiff's claim still must fail because the statements attributed to Wood-Smith are protected by a qualified privilege due to her role as Independent Trustee of the Trust, which owns and operates

17

ASGI. Amended Comp., ¶ 17. New York common law provides a qualified privilege protection for otherwise actionable statements which fall under a few limited categories, including: (1) when the statement "is fairly made by a person in the discharge of some public or private duty, legal or moral;" or (2) when the defamatory communication is "on any subject matter in which the party communicating has an interest…made to a person having a corresponding interest." *Chandok v. Klessig*, 632 F.3d 803, 814-15 (2d Cir. 2011) (internal quotations and citations omitted). *See also Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001); *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 98 (2d Cir. 2000) ("New York common law affords qualified protection to defamatory communications made by one person to another upon a subject in which both have an interest."). Notably, these privileges are available where, as here, "'the relation of the parties [is] such as to afford reasonable ground for supposing an innocent motive for giving the information, and to deprive the act of an appearance of officious intermeddling with the affairs of others.'" *Orenstein v. Figel*, 677 F. Supp. 2d 706, 710 (S.D.N.Y. 2009), *quoting Silverman v. Clark*, 822 N.Y.S.2d 9, 17 (1st Dep't 2006).

New York's qualified privilege extends to communications "upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty…if made to a person having a corresponding interest or duty." Plaintiff alleges that Wood-Smith made the statements in "an email, or an attachment to an email," that was sent "to members of the Stone family, including Jessie Stone and Allison Stabile, Claudia Stone's sisters who are also trustees of the Trust" and also to "Clare Stone, Allan Stone's widow and the Trust income beneficiary, and Olympia Stone, Clare's daughter and Trust remainderman." Amended Comp., ¶ 39. Each and every one of these individuals is a beneficiary of Allan Stone, entitled either to the income from the Trust or a distribution from the Trust upon the death of Clare Stone.

18

Amended Comp., Exhibit A, ¶ 7.  As such, the recipients of the email indisputably had an interest in matters affecting the profits or losses of ASGI, thus making the qualified privilege applicable here.  Moreover, Wood-Smith had a duty to disclose to the Trust's beneficiaries any concerns she may have had as to whether to rely on legal advice rendered to ASGI, such as that which was provided by the Plaintiff.  Amended Comp., Exhibit A, ¶ 54.

Although the qualified privilege may be overcome by a showing that the defendant acted with malice, plaintiff has not done so.  Even though the question of malice can in some instances be a question of fact, courts have held that a qualified privilege defense to defamation can be properly decided at the motion to dismiss stage "in light of the incorporation of a lack of privilege into the elements of a defamation claim."  *Orenstein*, 677 F. Supp. 2d at 711.  In any event, plaintiff has not asserted facts sufficient to defeat the qualified privilege.

New York has developed two definitions of "malice" in defamation cases – common law malice and actual (or constitutional) malice.  Plaintiff's litany of allegations that Wood-Smith was "motivated by spite" toward plaintiff because plaintiff's advice exposed the illegality of Wood-Smith's alleged "schemes" seems to suggest plaintiff is asserting common law malice, which is defined as "spite or ill will." *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992).  Under the common law definition of malice, "a triable issue is raised only if a jury could reasonably conclude that 'malice was the **one and only cause** for the publication.'"  *Id.* at 439 (*quoting Stukuls v. State of New York*, 42 N.Y.2d 272, 282 (1977)) (emphasis added).  While plaintiff certainly ascribes to Wood-Smith plenty of spite and ill will, most of which is pure conjecture[6],

---

[6] As evidence of spite or ill will, plaintiff hypothesizes that Wood-Smith "viewed Plaintiff as the ally of Claudia Stone, whom Wood-Smith had been responsible for

she also alleges that "Wood-Smith made the statements in order to deflect any criticism of her actions which could provide additional evidence to support the removal of Wood-Smith from her position as Independent Trustee." Amended Comp., ¶ 40. Particularly as plaintiff has ascribed to Wood-Smith a self-interested motive of protecting her "tenure as Independent Trustee of the Trust," *id.*, which has nothing to do with plaintiff, plaintiff cannot as a matter of law succeed in proving that malice was the "one and only cause for the publication," and so cannot defeat the privilege with common law malice. *Liberman*, 80 N.Y.2d at 439.

Nor do plaintiff's claims satisfy the second definition of "malice," which is the actual, or constitutional, malice standard set forth in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). *Liberman*, 80 N.Y.2d at 439. Under this standard, plaintiff must show that the "statements [were] made with [a] high degree of awareness of their probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). The only allegation plaintiff has made to show Wood-Smith's awareness of the falsity of the statements is in paragraphs 41 and 42 of the Amended Complaint:

> 41.   Moreover, as an attorney, Wood-Smith knew that her statements had no basis. As to Wood-Smith's statement that the legal advice "was incorrect", it is an incontrovertible proposition that asserting copyright over a work the copyright to which continues to be owned by the artist or where the work has passed into the public domain, with the intention exploiting it for financial gain, is fraudulent against either the owner or the public. Commentators have referred to this improper conduct as "copyfraud." Wood-Smith therefore knew the falsity of her assertion that the advice rendered by Plaintiff was "incorrect."

terminating." Equally preposterous is plaintiff's attribution of spite to Wood-Smith based on a comment plaintiff reports Wood-Smith's attorney made to her months after the defamatory email was allegedly sent, that, "you should not have sued your client." Amended Comp., ¶ 45. As plaintiff pleads this statement in the context of a conversation in which Wood-Smith's attorney advised plaintiff that ASGI would be making a counterclaim for malpractice, it is unclear how this is evidence of Wood-Smith's spite. *Id.*

> 42. Wood-Smith's second statement, that the legal advice "cost the Trust hundreds of thousands of dollars", was also false. Because Plaintiff's advice was manifestly correct, it was impossible for the Trust to have lost any money based on that advice and, indeed, none of the Trust's representatives has identified any specific loss or losses attributable to Plaintiff's advice. More importantly, Wood-Smith's statement asserts that Plaintiff *caused* the Trust to lose "hundreds of thousands of dollars", but the legal advice rendered by Plaintiff was just that, advice....

The first assertion, that by virtue of being an attorney Wood-Smith knew her statements were unfounded, is a legal non-starter. The standard for actual or constitutional malice "is a subjective one, focusing on the speaker's state of mind and has nothing to do with whether a reasonable person would have believed the statement to be false." *Brooks v. Anderson*, 18 Misc.3d 1109(A) (Sup. Ct., Bronx County 2007). Plaintiff makes no assertions as to whether Wood-Smith *actually* had knowledge as to the statement of law set forth in paragraph 41 other than the absurd assertion that she should have known as a member of the bar, thereby providing no evidence of Wood-Smith's subjective belief as to the truth of her statement. The second assertion contained in paragraph 42, is even more incredible, wherein plaintiff states, in effect, that whether the proffered advice were right or wrong, Wood-Smith was not obligated to rely on her attorney's advice. This assertion is simply disingenuous particularly in light of the fact that plaintiff held herself out as an attorney having the requisite expertise to provide copyright guidance with respect to the terms of an actual sale agreement, and has subsequently sued to recover her unpaid legal fees incurred in providing this advice. Amended Comp., Exhibit B.

## POINT IV

### PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

In order to state a colorable claim for tortious interference with prospective business relations, plaintiff must plead:

> (a) business relations with a third party; (b) the defendant's interference with those business relations; (c) the defendant acting with the sole purpose of harming the plaintiff or using wrongful means; and (d) injury to the business relationship.

*Advanced Global Technology LLC v. Sirius Satellite Radio, Inc.*, 15 Misc.3d 776 (2007), *citing Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183 (1990).

Tortious interference claims are subjected to a stricter standard "[w]here there has been no breach of an existing contract, but only interference with prospective contract rights," and "plaintiff must show more culpable conduct on the part of the defendant." *NBT Bancorp, Inc. v. Fleet/Norstar Fin. Group*, 87 N.Y.2d 614, 621 (1996). To do so, defendant's actions must amount to an independent tort. Restatement 2d of Torts §768, cmt. e. For the reasons discussed *supra*, plaintiff cannot show that Wood-Smith's statement constituted the tort of defamation.

The essence of plaintiff's tortious interference claim is that due to allegedly defamatory statements by Wood-Smith that plaintiff's legal advice was incorrect and cost ASGI "hundreds of thousands of dollars," plaintiff was damaged because "the prospects for Plaintiff being hired by members of the Stone family in the future to render legal advice have been irreparably damaged." Amended Comp., ¶ 47. Plaintiff further alleges that "based on her work rendering legal advice to the Gallery over the preceding sixteen years, Plaintiff had an ongoing business relationship with the Gallery and with members of the Stone family." Amended Comp., ¶ 73. However, for reasons

22

completely unrelated to Wood-Smith's alleged statement of dissatisfaction with the quality of plaintiff's legal services, plaintiff could not have continued in her representation of either the Gallery or of members of the Stone family since in or about March 2011 without acting in disregard of the ethical rules governing attorneys practicing in the state of New York, especially with respect to the alleged conflicts of interest. Therefore, plaintiff cannot show any injury to her business relationships or that she had any lawful business relations with which Wood-Smith could interfere. *See* N.Y. Rules of Prof'l Conduct 1.7, 1.9, and 1.13.

"It is well settled that the relationship of client and counsel is one of 'unique fiduciary reliance' (*Cooperman*, 83 NY2d at 472) and that the relationship imposes on the attorney '[t]he duty to deal fairly, honestly and with undivided loyalty . . . including maintaining confidentiality, avoiding conflicts of interest, operating competently, safeguarding client property and honoring the clients' interests over the lawyer's' (*id.*)." *Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 2008 NY Slip Op 6894, at *5 (N.Y. App. Div. 1st Dep't 2008). *See also* N.Y. Rules of Prof'l Conduct 1.7 ("a lawyer shall not represent a client if a reasonable lawyer would conclude that either: (1) the representation will involve the lawyer in representing differing interests; or (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interest."). However, the Amended Complaint flouts the well-settled rule that "attorneys historically have been strictly forbidden from placing themselves in a position where they must advance, or even appear to advance, conflicting interests." *Greene v. Greene*, 47 N.Y.2d 447, 451 (1979). For example:

23

1. Plaintiff states that "in or about February 2011, at Claudia Stone's request, Plaintiff orally rendered legal advice to the Gallery on a separate, employment matter." Amended Comp., ¶ 30. Yet, plaintiff also admits that "over the years, Plaintiff has had an attorney-client relationship with other Gallery employees, including Georgia Jaksic, Alex Yudzon and Nguyen Ducmanh." Amended Comp., ¶ 55.

2. Plaintiff admits representing parties with interests adverse to ASGI, *i.e.*, she represented both ASGI and Claudia Stone concurrently even though "Claudia Stone and Woodsmith [were] in open conflict." Amended Comp. Exh. B, ¶ 21. Moreover, "In face of such conduct, and given her longstanding personal relationship with Claudia Stone, Plaintiff advised the Trustees on March 24, 2011 via email, that she viewed this conduct as inappropriate and since this put Plaintiff in a position of conflicting loyalties, Plaintiff was resigning as counsel to the Gallery." Amended Comp., Exh. B, ¶ 22. Plaintiff, however, continued to represent Claudia Stone throughout this period and beyond. Amended Comp., ¶ 54 ("[F]rom 2010 through 2011, Claudia Stone and her husband engaged Plaintiff to represent them...").

Plaintiff's representation of Claudia Stone and various ASGI employees, either concurrently with her representation of ASGI or subsequent to her withdrawal as its counsel, fly in the face of her duty to ASGI. *See Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 177 (2d Cir. 2009), *quoting Evans v. Artek Sys. Corp.*, 715 F.2d 788, 792 (2d Cir. 1983) ("A 'corporate attorney'... owes a duty to act in accordance with the interests of the corporate entity itself. [The] client is the corporation."). Thus, in accordance with her ethical responsibilities, plaintiff ought to have either sought a waiver from ASGI and from the Stone and employee clients, or absent receipt of same, withdrawn from her representation of all parties. *See* N.Y. Rules of Prof'l Conduct 1.7, 1.9, and 1.13.

Notably, plaintiff makes no mention of having sought or obtained conflicts waivers from ASGI, its employees, or any Trust beneficiaries.[7]  Just as plaintiff had

---

[7] In order to avoid this appearance of impropriety, "a law firm may simultaneously represent the competing interests of two opposing clients only with the clients' consent

already severed her business relationship with ASGI prior to the "defamatory" statement by Wood-Smith which forms the grounds for the tortious interference claim, plaintiff also cannot carry on a business relationship with any members of the Stone family. Clare Chester Stone, "as the income beneficiary of the trust, has filed a petition to remove Wood-Smith as independent trustee, joined by *several* of the testator's children." Amended Comp., ¶ 2 (emphasis added); *see also* Exh. A. Notably, not all of the testator's children have supported these adversarial proceedings as there is "hostility and discord among the members of the Stone family." Amended Comp., ¶ 22. Having once apparently represented some or all of the Stone family members, plaintiff cannot continue to represent any when there is such an ongoing "power struggle." Amended Comp., ¶ 3.

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that this motion to dismiss be granted and the complaint be dismissed in its entirety, together with an award of defendant's costs and attorneys' fees.

Dated: New York, New York
February 21, 2012

BERKE-WEISS & PECHMAN LLP

By:

Laurie Berke-Weiss
Jessica N. Tischler
488 Madison Avenue, 11th Floor
New York, New York 10022
(212) 583-9500
*Attorneys for Defendant Lelia Wood-Smith*

---

after full disclosure of the dual representation and its consequences (*see e.g. Matter of Metropolitan Transp. Auth.*, 222 A.D.2d 340, 341, 635 N.Y.S.2d 604 (1995); Code of Professional Responsibility DR 5-105 (22 NYCRR 1200.24))." *Ulico Cas. Co.*, 2008 NY Slip Op 6894, at *5.

25