UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
                                   :
KERRY E. CONNOLLY, ESQ.,           :    11 Civ. 8801 (DAB) (JCF)
                                   :
            Plaintiff,             :       REPORT AND
                                   :    RECOMMENDATION
    - against -                    :
                                   :
LELIA MARTIN WOOD-SMITH; and       :
"JOHN DOES" 1 THROUGH 5,           :
                                   :
            Defendants.            :
                                   :
- - - - - - - - - - - - - - - - - -:
TO THE HONORABLE DEBORAH A. BATTS, U.S.D.J.:

        Kerry E. Connolly brings this action asserting claims against
the defendants for defamation, tortious interference with
prospective business advantage, and violations of the Stored
Communications Act, 18 U.S.C. § 2701 et seq (the "SCA"). Defendant
Lelia Martin Wood-Smith moves to dismiss the plaintiff's claims
against her pursuant to Rules 12(b)(6) and 8(a) of the Federal
Rules of Civil Procedure.  This Court has subject matter
jurisdiction pursuant to 28 U.S.C. § 1331 because this case arises
under a federal statute, and 28 U.S.C. § 1332 because the plaintiff
is a citizen of New York, Ms. Wood-Smith is a citizen of Florida,
and the amount in controversy exceeds $75,000.  (Amended Complaint
("Compl."), ¶ 7).  For the following reasons, I recommend that the
motion be granted in part and denied in part.

1

Background

    A.   <u>Facts</u>

        1.   <u>Defamation and Tortious Interference Claims</u>

The plaintiff is an attorney who has provided legal services to the Allan Stone Gallery (the "Gallery"), an art gallery founded by renowned art dealer and collector Allan Stone, since 1995. (Compl., ¶ 13). After Mr. Stone's death in 2006, his entire interest in the Gallery was vested in the C.S. Marital Trust (the "Trust"), the finances and business affairs of which were controlled by Ms. Wood-Smith, who held the position of Independent Trustee.[1]  (Compl., ¶¶ 17-18).

In or around December 2010, Ms. Wood-Smith instructed Claudia Stone, Mr. Stone's daughter and director of the Gallery, to add a legend to invoices for the sale of two paintings to indicate that, post-sale, the Gallery still retained the copyright to the paintings. (Compl., ¶ 23). This instruction directly contradicted the plaintiff's previous legal advice to the Gallery. (Compl., ¶ 23). Ms. Stone, concerned that the practice was illegal, asked Ms. Connolly's advice on the matter. (Compl., ¶ 25). The plaintiff

---

    [1] On January 23, 2012, Ms. Wood-Smith was suspended from her position as Independent Trustee pursuant to order of the Surrogate's Court, Westchester County. (Decision & Order dated January 23, 2012, attached as Exh. A to Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Pl. Memo."), at 5).

then wrote a memorandum setting forth her advice to Ms. Stone on December 11, 2010. (Compl., ¶ 26; Memorandum dated December 11, 2010 (the "December Memo") attached as Exh. 1 to Declaration of Laurie Berke-Weiss dated April 6, 2012). Ms. Connolly advised Ms. Stone that the artists' rights organization representing the painter maintained that the artist owned the copyright in the two paintings at issue, and further, that even if the organization were incorrect and the two paintings had passed into the public domain, assertion of copyright over public domain property was a violation of the Copyright Act. (Compl., ¶ 26-27; December Memo). The December Memo was "only the latest in a series of legal advices drafted by [the] [p]laintiff for the Gallery on the nature and scope of copyright and [f]air [u]se." (Compl., ¶ 28). This advice included an earlier memorandum in which Ms. Connolly advised Ms. Wood-Smith that an artist retains the copyright in the work even after it is sold unless the copyright is separately conveyed in a writing. (Compl., ¶ 28). On March 8, 2011, Ms. Connolly followed up the December Memo with an e-mail to Ms. Wood-Smith in which she related additional concerns about with falsely asserting ownership of copyright under state law. (Compl., ¶ 29).

In or around February 2011, the plaintiff orally rendered legal advice to the Gallery on an unrelated employment matter. (Compl., ¶ 30). This advice, which Ms. Stone conveyed to Ms. Wood-

Smith, suggested that Ms. Wood-Smith's position on the matter was incorrect and could subject the Gallery to liability under federal and state labor laws. (Compl., ¶ 31). Ms. Stone then informed Ms. Connolly that the defendant was "taking other actions which [she] believed were wrongful and/or illegal," and warned the plaintiff that Ms. Wood-Smith "would be angry about the legal advice [she] had rendered." (Compl., ¶¶ 32-33). After expressing her opposition to Ms. Wood-Smith's acts, Ms. Stone's employment with the Gallery was terminated. (Compl., ¶ 34).

The plaintiff submitted invoices to the Gallery containing her charges for the legal advice provided relating to the assertion of copyright and her advice on the employment matter. (Compl., ¶ 35). As the Independent Trustee, the defendant had the power to authorize payment on invoices sent to the Gallery. (Compl., ¶ 35). When Ms. Connolly first submitted the two invoices, Ms. Wood-Smith did not object or request any explanation as to the services rendered. (Compl., ¶ 36). Having not been paid after sending additional copies, the plaintiff then submitted a third set of the outstanding invoices, at which time the defendant "asked [her] to send a copy of all the emails relating to the issue analyzed in the December [] memo[] and all of [the] [p]laintiff's research on the matter." (Compl., ¶ 36). Despite Ms. Connolly's compliance with this request, Ms. Wood-Smith still did not pay the invoices, and on

September 28, 2011, the plaintiff filed suit to recover her legal fees from the Gallery (the "fees action").  (Compl., ¶ 36-37).

Ms. Stone later informed the plaintiff that, after she had filed the fees action, the defendant sent an e-mail to members of the Stone family -- including Jessie Stone and Allison Stabile, both of whom are trustees -- in which she stated that Ms. Connolly's "ongoing advice on copyright 'was incorrect' and 'had cost the Trust hundreds of thousands of dollars.'"[2]  (Compl., ¶ 38-39).  The plaintiff alleges that Ms. Wood-Smith, in making the statements, "was motivated by malice and spite," and did so "in order to deflect any criticism of her actions which could provide additional evidence to support the removal of [Ms.] Wood-Smith from her position as Independent Trustee."  (Compl., ¶ 40).  Ms. Connolly further alleges that the defendant "retaliated against [her] because [her] advice undermined [the defendant], who is embroiled in litigation in the Surrogate's Court in Westchester County to retain her tenure as Independent Trustee."  (Compl., ¶ 40).

Additionally, the plaintiff alleges that, as an attorney, Ms. Wood-Smith knew that her statements about Ms. Connolly's legal

---

[2]  The complaint alleges that the statements were made "in an email, or an attachment to an email, that [Ms.] Wood-Smith wrote." (Compl., ¶ 39).

advice "had no basis," and that, "[b]ecause [the] [p]laintiff's advice was manifestly correct, it was impossible for the Trust to have lost any money based on that advice and, indeed, none of the Trust's representatives has identified any specific loss or losses attributable to [the] advice." (Compl., ¶¶ 41-42). She further asserts that the advice could not have caused the loss claimed by the defendant because "the legal advice [she] rendered . . . was just that, advice. The advice was not an injunction or some other impediment to [Ms.] Wood-Smith taking action in contravention of that advice. [Ms.] Wood-Smith remained free to do as she wished." (Compl., ¶ 42).

On or around October 31, 2011, the defendant's attorney contacted the plaintiff and requested additional time to respond to her complaint in the fees action, a request that was refused. (Compl., ¶ 43). In so doing, Ms. Connolly pointed out that defending the action was a waste of Trust assets, and informed members of the Stone family of her opinion on the matter. (Compl., ¶ 43). On November 3, 2011, Ms. Wood-Smith's attorney, Laurie Berke-Weiss, represented in an e-mail that the Gallery wanted the extension of time to work out an agreement, stating that "[t]he agreement we contemplate will involve paying you your fee plus the statutory interest since the date of breach you allege," and that the terms "would be subject to negotiations between [the parties]

6

during the extension period." (Compl., ¶ 44).  The defendant made no subsequent attempt to settle the fees action. (Compl., ¶ 45). On December 1, 2011, the defendant's attorney informed the plaintiff that the Gallery was going to assert a malpractice claim against her, stating, "[Y]ou should not have sued your client." (Compl., ¶ 45).

Ms. Connolly alleges that, as a result of the defendant's false statements, her reputation as a competent attorney has been damaged, and that the statements constitute libel <u>per</u> <u>se</u>. (Compl., ¶ 46).  The plaintiff further claims that her prospects for being hired by members of the Stone family to render legal advice in the future have been irreparably injured, causing her damage. (Compl., ¶ 47).

### 2.   Stored Communications Act Claim

Each Gallery employee was assigned an e-mail address in the course of employment. (Compl., ¶ 49).  Gallery employees were permitted to use the e-mail service for personal e-mails, and the Gallery "never instituted any policy asserting ownership in or rights to the employees' emails, and never otherwise advised the employees that they did not have a reasonable expectation of privacy in their emails or that their emails were subject to review by the Gallery." (Compl., ¶ 50).  Moreover, the Gallery did not have access to its employees' e-mail account passwords, nor could

it directly access employee e-mails; only the provider and administrator of the Gallery's e-mail service, a company called "exhibit-E," had each Gallery employee's password. (Compl., ¶¶ 49, 51). "As part of its service of providing email access to the Gallery employees, and as an incident to the transmission of the emails to Gallery employees, exhibit-E stored the Gallery emails on its server." (Compl., ¶ 52).

Over the course of several years, Ms. Connolly has had an attorney-client relationship with a number of Gallery employees, including Ms. Stone, with whom she communicated by means of the Gallery e-mail service. (Compl., ¶¶ 53-55). "Based on her knowledge that the Gallery emails were not subject to surveillance," the plaintiff alleges, she "had a reasonable expectation of privacy in her communications with [Ms.] Stone and the other employees . . . via the Gallery email service." (Compl., ¶ 56).

Ms. Connolly alleges that Ms. Wood-Smith and Defendants John Does 1-5 (the "John Does") accessed her e-mails illegally without her or any Gallery employee's consent. (Compl., ¶¶ 57, 65). This is revealed, she explains, in the timesheets that Ms. Berke-Weiss submitted to the Surrogate's Court in Westchester County for approval in the course of litigation for the removal of

Ms. Wood-Smith as Independent Trustee.[3]   (Compl., ¶ 58; Timesheets
of Laurie Berke-Weiss ("Timesheets") attached as Exh. C to Compl.,
at 5-6).   The timesheets indicate that, beginning April 21, 2011,
Ms. Wood-Smith conferred with Ms. Berke-Weiss about "obtaining
online access to Gallery email."   (Compl., ¶ 59; Timesheets at 5).
That same day, Ms. Berke-Weiss held a telephone conference with "B.
Maker" of exhibit-E, and followed this up with an e-mail to Mr.
Maker "re[garding] passwords from exhibit-E."   (Compl., ¶ 60;
Timesheets at 4-5).   Over the course of the next week, Ms.
Berke-Weiss corresponded on multiple occasions with "S. Greenes,"
the attorney for exhibit-E, regarding her request for Gallery
employee e-mail account passwords.   (Compl., ¶¶ 61-62).   The
timesheets further indicate that Mr. Greenes requested that
exhibit-E be indemnified in return for satisfying her request.
(Compl., ¶ 62-63).   On April 28, Ms. Berke-Weiss drafted, and Ms.
Wood-Smith approved, an indemnity letter to Mr. Greenes.   (Compl.,
¶ 63; Timesheets at 6).

Ms. Connolly claims that, "as a result of receiving this
indemnification, exhibit-E turned over the Gallery emails it
maintained on its server to [Ms.] Wood-Smith and [the] John Does
. . . , who proceeded to review the contents of those emails."

_____

    [3] Ms. Berke-Weiss is counsel for the defendant in the removal
proceedings, the plaintiff's fees action, and the instant action.

(Compl., ¶ 64).  The plaintiff further alleges that the defendants
"intentionally accessed exhibit-E's server, on which exhibit-E
stored the Gallery emails as an incident to the transmission of
these emails to Gallery employees." (Compl., ¶ 81).   Finally,
according to Ms. Connolly, "[b]y obtaining the emails from
exhibit-E's server, Defendants [Ms.] Wood-Smith and [the] John Does
. . . violated the attorney-client privilege, and intruded on the
privacy of [the] [p]laintiff and the Gallery employees, thereby
causing harm to [the] [p]laintiff." (Compl., ¶ 84).

    B.   <u>Procedural History</u>

    The plaintiff filed the instant action <u>pro se</u> on December 2,
2011, asserting claims against Ms. Wood-Smith for violations of the
SCA and for defamation <u>per se</u>.  On January 3, 2012, Ms. Wood-Smith
moved to dismiss the complaint pursuant to Rules 8(a) and 12(b)(6).
On January 23, 2012, Ms. Connolly, with the assistance of counsel,
submitted an Amended Complaint in which she added a third cause of
action for tortious interference with prospective business
advantage, and added the John Doe Defendants.  Ms. Wood-Smith now
moves to dismiss the Amended Complaint pursuant to Rules 8(a) and
12(b)(6) because the plaintiff "fails to allege facts sufficient to
support a claim under the SCA or for defamation, and for lack of
subject matter jurisdiction over [the] plaintiff's state law
claim[s]." (Defendant Lelia Martin Wood-Smith's Motion to Dismiss

Plaintiff's Amended Complaint ("Def. Memo.") at 2).  The defendant also contends that the plaintiff's defamation claim is barred by virtue of Ms. Wood-Smith's role as the Independent Trustee of the Trust, which owns and operates the Gallery and which affords a qualified privilege for the allegedly defamatory communications. (Def. Memo. at 2).  Finally, the defendant argues that Ms. Connolly has a conflict of interest that bars her from pursuing further business relationships with members of the Stone family, thereby precluding any tortious interference claim.  (Defendant's Reply Memorandum of Law in Further Support of Her Motion to Dismiss the Amended Complaint ("Def. Reply") at 8-10).

<u>Discussion</u>

    A.   <u>Legal Standard</u>

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007) (per curiam); <u>Freedom Holdings, Inc. v. Spitzer</u>, 357 F.3d 205, 216 (2d Cir. 2004).  A complaint need not contain detailed factual allegations, but must contain more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009) (citing <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544,

555-56 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Id. (citing Twombly, 550 U.S. at 570).  Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the general pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  Id. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

On a motion to dismiss, the court is generally limited to reviewing the allegations in the complaint and documents attached to it or incorporated by reference.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-54 (2d Cir. 2002).  The court may also consider documents that are exhibits to the complaint or were necessarily relied upon by the plaintiff in drafting the complaint. Id. at 153-54; Fed. R. Civ. P. 10(c).

B.  Defamation

"'To state a claim for defamation under New York Law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused '"special damages."'"  Thai v. Cayre Group, Ltd., 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) (alteration in original) (quoting

12

Gargiulo v. Forster & Garbus, Esqs., 651 F. Supp. 2d 188, 192
(S.D.N.Y. 2009)).  A statement is defamatory per se -- and thus,
injury is assumed and no proof of special damages is required -- if
it "tends to disparage a person in the way of [her] office,
profession, or trade," or "impugn[s] the basic integrity,
creditworthiness[,] and competence of [her] business."  Celle v.
Filipino Reporter Enterprises Inc., 209 F.3d 163, 179, 180 (2d Cir.
2000) (citing Davis v. Ross, 754 F.2d 80, 82 (2d Cir. 1985), and
Langenbacher Co. v. Tolksdorf, 199 A.D.2d 64, 65, 605 N.Y.S.2d 34,
35 (1st Dep't 1993) (internal quotation marks omitted)).

Ms. Wood-Smith argues that the plaintiff's defamation claim
should be dismissed because the pleadings rely on hearsay and are
too vague to provide fair notice of the claim and the grounds upon
which it rests; the plaintiff has not pled special damages and
cannot show defamation per se; the "single instance" exception to
liability defeats the claim; the statements were a protected
expression of opinion or, alternatively, akin to an employer's
evaluation of an employee's job performance; the alleged statement
was protected by qualified privilege; and the plaintiff cannot show
the defendant acted with either common law or actual malice.  (Def.
Memo. at 13-21; Def. Reply at 4-8).

1.   Fair Notice

As an initial matter, the defendant's 'fair notice' argument

fails.  A claim for defamation brought in federal court is governed by the liberal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  Edward B. Beharry & Co. v. Bedessee Imports Inc., No. 09 CV 0077, 2010 WL 1223590, at *5 (E.D.N.Y. March 23, 2010); Muzio v. Incorporated Village of Bayville, No. CV-99-8605, 2006 WL 39063, at *8 (E.D.N.Y. Jan. 3, 2006); Unique Sports Generation, Inc. v. LGH-III, LLC, No. 03 Civ. 8324, 2005 WL 2414452, at *9 (S.D.N.Y. Sept. 30, 2005).  Under Rule 8, a complaint "need not specifically plead the alleged defamatory words; rather, the pleading party need only provide the opposing party with 'sufficient notice of the communications complained of to enable him to defend himself.'" Unique Sports, 2005 WL 2414452, at *9 (quoting Treppel v. Biovail Corp., No. 03 Civ. 3002, 2005 WL 2086339, at *8 (S.D.N.Y. Aug. 30, 2005)).  "In determining whether a defamation claim complies with the pleading requirements of Rule 8, the court should consider whether the complaint references the alleged defamatory statement; identifies the maker of that statement; and indicates when the statement was made, in what context it was made, whether it was made orally or in writing and whether it was made to a third party." Muzio, 2006 WL 39063, at *8 (citing Nickerson v. Communications Workers of America Local 1171, No. 04 CV 0875, 2005 WL 1331122, at *7 (N.D.N.Y. May 31, 2005)).

The plaintiff has satisfied this burden.  The Amended

14

Complaint alleges what the statements were, who made the statements, the means by which they were communicated, and specifically identifies several individuals to whom, at a minimum, the e-mail was sent. (Compl., ¶¶ 38-39). Although Ms. Connolly does not allege the exact date the e-mail was transmitted, she does specify that it was sent after she filed the fees action on September 28, 2011, thereby providing a general timeframe. (Compl., ¶¶ 37-38). In sum, the Amended Complaint is specific enough to provide Ms. Wood-Smith with "sufficient notice of the communications complained of to enable [her] to defend [her]self." Unique Sports, 2005 WL 2414452, at *9 (internal quotation marks omitted).

    2.  Hearsay

On a motion to dismiss, where the allegations must be accepted as true and all reasonable inferences must be drawn in the claimant's favor, the fact that the pleadings may rely on hearsay does not warrant dismissal. See, e.g., Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'"); Johnson v. Medisys Health Network, No. 10 CV 1596, 2011 WL 5222917, at *6 (E.D.N.Y. June 1, 2011) ("A motion to dismiss pursuant to [Rule 12(b)(6)] tests the legal, not the factual,

sufficiency of a complaint."); <u>see also</u> <u>Widmar v. Sun Chemical</u>
<u>Corp.</u>, No. 11 C 1818, 2012 WL 1378657, at *7 (N.D. Ill. April 19,
2012) (denying motion to dismiss and rejecting "[d]efendants'
argument that [the] [p]laintiff cannot rely on hearsay in his
defamation complaint (based on summary judgment standards)");
<u>Prince v. Madison Square Garden</u>, 427 F. Supp. 2d 372, 378 (S.D.N.Y.
2006) ("It is impossible and inappropriate to determine at this
point in the litigation how [the plaintiff] might go about proving
the truth of the comments allegedly made by [the defendant]. . . .
Rather, . . . the allegations must be accepted as true.
Accordingly, it is inappropriate at this stage to consider whether
or not the factual support underlying [the plaintiff]'s
claim . . . constitutes hearsay." (internal citation omitted)); <u>cf.</u>
<u>Garcia v. Brown</u>, 442 F. Supp. 2d 132, 140 (S.D.N.Y. 2006)
("[B]ecause Rule 56 requires competent (that is, admissible)
evidence to raise a genuine issue of material fact, the hearsay
that sufficed at the pleading stage would not have gotten [the
plaintiff] past a motion for summary judgment.").

    3.   <u>Defamation Per Se</u>

As for the defendant's argument that Ms. Connolly cannot show
that the purported e-mail was defamatory, at this stage it need
only be "determine[d] whether the statements at issue are
reasonably susceptible of a defamatory meaning." <u>Treppel</u>, 2005 WL

2086339, at *7 (internal quotation marks omitted).  Furthermore,
because the allegations of the complaint are accepted as true, it
is assumed that the statements were made by the defendant and are
false.  Id. at 8.

Here, Ms. Connolly alleges that "[Ms.] Wood-Smith stated that
[the] [p]laintiff's ongoing [legal] advice on copyright 'was
incorrect' and 'had cost the Trust hundreds of thousands of
dollars.'"  (Compl., ¶ 38).  As such statements "tend[] to
disparage" the plaintiff in the way of her profession and "impugn"
her "competence" as an attorney, they are reasonably susceptible of
a defamatory meaning.  Celle, 209 F.3d at 179, 180; see also Four
Star Stage Lighting v. Merrick, 56 A.D.2d 767, 768, 392 N.Y.S.2d
297, 298 (1st Dep't 1977) ("[W]ords are libelous if they affect a
person in [her] profession, trade, or business by imputing to [her]
any kind of . . . incapacity, unfitness, or want of any necessary
qualification in the exercise thereof.").  For purposes of the
motion to dismiss, Ms. Connolly has adequately pled that the
purported e-mail was defamatory.  Furthermore, because the
statements qualify as defamation per se, the plaintiff need not
prove special damages to prevail on her claim.[4]  Celle, 209 F.3d at

---

[4] It should nonetheless be pointed out that the plaintiff has
not adequately pled special damages.  Ms. Connolly argues that her
"special damages are her already earned attorney's fees that remain
unpaid."  (Pl. Memo. at 21).  However, as her pleadings make clear,

17

179.

### 4.   Single Instance Exception

The defendant further contends that, even if her statements were found to be defamatory, the "single instance" exception defeats the plaintiff's claim.  "The New York single instance rule is a narrow exception to the principle that a statement tending to disparage a person in his or her office, profession[,] or trade is defamatory per se.  It 'applies where a publication charges a professional person with a single error in judgment, which the law presumes not to injure reputation.'"  Celle, 209 F.3d at 180 (citing Armstrong v. Simon & Schuster, Inc., 85 N.Y.2d 373, 379 n.5, 625 N.Y.S.2d 477, 480 n.5 (1995)).  "Under this rule . . . a statement charging an individual with a 'single dereliction in connection with his or her trade, occupation, or profession does not necessarily charge that party with general incompetence, ignorance, or lack of skill and is not deemed actionable . . . .'" Id. (internal citation omitted).  In recent years, "the doctrine has received a narrow reading," and its application is limited "'to those episodes which are best read as errors, mistakes, or lapses

---

"[i]t was only after [she] had sued to recover her legal fees that, for the first time, [Ms.] Wood-Smith" made the statements giving rise to the plaintiff's claim.  (Compl., ¶ 38).  On these facts, therefore, it is impossible that the defendant's statements could have caused the special damages alleged.

in judgment.'" Robert D. Sack, <u>Sack on Defamation: Libel, Slander</u> <u>& Related Problems</u> § 2:4.15 (2012) (quoting <u>Lucking v. Maier</u>, No. 03 Civ. 1401, 2003 WL 23018787, at *6 (S.D.N.Y. Dec. 23, 2003)).

Ms. Wood-Smith argues that the "single instance" exception defeats the plaintiff's claim because the Amended Complaint "merely accuses [her] of saying that [the] plaintiff gave incorrect advice on a particular matter." (Def. Memo. at 16). This is inaccurate. The Amended Complaint alleges that the defendant characterized the plaintiff's "ongoing legal advice" as incorrect, which, by its terms, implies more than a "single dereliction." Moreover, the pleadings refer to three occasions on which Ms. Connolly provided the advice that purportedly "cost the Trust hundreds of thousands of dollars." (Compl., ¶ 3). Specifically, the Amended Complaint alleges that the plaintiff drafted "a series of legal advices . . . for the Gallery on the nature and scope of copyright and [f]air [u]se," including not only the December Memo, but a previous memorandum sent "earlier in the year[]," and, in March 2011, a subsequent e-mail addressing "additional issues with falsely asserting ownership of copyright under state law." (Compl., ¶¶ 28-29). Therefore, the statements attributed to the defendant are predicated not merely on one mistake or "lapse in judgment," but rather, at a minimum, on three. Accepting the plaintiff's allegations as true, she has pled facts sufficient to survive

19

dismissal on the basis of the single instance exception.[5]

     5.   <u>Opinion</u>

Ms. Wood-Smith next argues that her alleged statements are protected expressions of opinion.  Statements of "pure opinion" are not defamatory as a matter of law even if they are libelous.  <u>Doe v. White Plains Hospital Medical Center</u>, No. 10 Civ. 5405, 2011 WL 2899174, at *3 (S.D.N.Y. July 8, 2011).  The defendant argues in the alternative that her "critique of [the] plaintiff's legal services -- performed as attorney for [the Gallery], for which [Ms. Wood-Smith] served as an officer -- is akin to an employer's evaluation of an employee's job performance. . . ." (Def. Memo. at 15).  In some cases, New York courts have found "subjective job

---

    [5] Again, because the plaintiff has not yet submitted a copy of the alleged e-mail, it is impossible to determine whether the statement as a whole "merely recite[s] a single instance of failure of job performance, [or] rather tends to accuse [her] of general incompetence." <u>See</u> <u>Fruchter v. Sossei</u>, No. 94 Civ. 8586, 1996 WL 640896, at *10 (S.D.N.Y. Nov. 4, 1996); <u>cf.</u> <u>DiFolco v. MSNBC Cable L.L.C.</u>, __ F. Supp. 2d __, __, 2011 WL 5519824, at *12 (S.D.N.Y. 2011) (single instance exception applicable because defamatory statements referred to a single event); <u>Bowes v. Magna Concepts, Inc.</u>, 166 A.D.2d 347, 348, 561 N.Y.S.2d 16, 17 (1st Dep't 1990) (single instance exception applicable "[s]ince the language complained of here implies merely that plaintiff was careless in one particular instance in a statement she made in a magazine article and is not broad enough to charge plaintiff with general incompetence or lack of skill").  That being said, the "determinations here may be reconsidered after completion of discovery if . . . perusal of the [e-mail] itself reveals that it accuses [the plaintiff] of only a single dereliction in duty and does not charge broader incompetence." <u>Fruchter</u>, 1996 WL 640896, at *10 n.10.

evaluations . . . [to be] non-actionable opinion." <u>White Plains Hospital Medical Center</u>, 2011 WL 2899174, at *3 (citing cases).

To determine whether a particular communication is actionable, the New York State Court of Appeals has set forth the following considerations:

> [W]e continue to recognize and utilize the important distinction between a statement of opinion that implies a basis in facts which are not disclosed to the reader or listener, and a statement of opinion that is accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts.  The former are actionable not because they convey "false opinions" but rather because a reasonable listener or reader would infer that the speaker or writer knows certain facts, unknown to the audience, which support the opinion and are detrimental to the person toward whom the communication is directed.  In contrast, the latter are not actionable because . . . a proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience as conjecture.  Indeed, this class of statements provides a clear illustration of situations in which the full context of the communication signals readers or listeners that what is being read or heard is likely to be opinion, not fact.

<u>Gross v. New York Times Co.</u>, 82 N.Y.2d 146, 153-54, 603 N.Y.S.2d 813, 818 (1993) (internal citations and punctuation omitted).

The statements at issue in this case are unaccompanied by a recitation of the facts on which they are based, and, as alleged, "imply the existence of undisclosed underlying facts."  A reasonable reader would infer that Ms. Wood-Smith "knows certain facts[] unknown to the audience" -- specifically, why the

plaintiff's legal advice was incorrect and how it cost the Trust hundreds of thousands of dollars -- which support her statements and are detrimental to Ms. Connolly.  Ms. Connolly has not yet produced a copy of the alleged e-mail, so "the full context of the communication" cannot be analyzed to determine whether it "signals" to the recipient that the statements are mere conjecture.  For purposes of the instant motion, however, she has stated sufficient facts to indicate that the statements were not protected expressions of "pure opinion," and thus, to survive dismissal.

      6.   <u>Qualified Privilege/Malice</u>

Finally, Ms. Wood-Smith contends that, even if the plaintiff is found to have stated a claim for defamation, her claim must fail because the statements attributed to the defendant are protected by a qualified privilege due to her role as Independent Trustee of the Trust.  (Def. Memo. at 17).  New York affords qualified protection to otherwise actionable communications "when [they are] fairly made by a person in the discharge of some public or private duty, legal or moral," or "made by one person to another upon a subject in which both have an interest."  <u>Chandok v. Klessig</u>, 632 F.3d 803, 814-15 (2d Cir. 2011) (internal quotation marks omitted); <u>Albert v. Loksen</u>, 239 F.3d 256, 272 (2d Cir. 2001).

A qualified privilege may be overcome, however, by a showing either of "actual" malice or of common-law malice.  <u>Chandok</u>, 632

F.3d at 815.  Common-law malice, which means "spite or ill-will," will defeat such a privilege only if it was "'the one and only cause for the publication.'"  Id.  (quoting Liberman v. Gelstein, 80 N.Y.2d 429, 439, 590 N.Y.S.2d 857, 863 (1992)).

The plaintiff has alleged, among other things, that "[Ms.] Wood-Smith made the statements in order to deflect any criticism of her actions which could provide additional evidence to support [her] removal . . . from her position as Independent Trustee." (Compl., ¶ 40).  As the defendant correctly points out, Ms. Connolly, in so pleading, "has ascribed to [Ms.] Wood-Smith a self-interested motive of protecting her tenure as Independent Trustee," and thus, "cannot as a matter of law succeed in proving that malice was the 'one and only cause for the publication.'" (Def. Memo. at 20).

"Actual" malice, on the other hand, means publication with "knowledge of the statement's falsity or reckless disregard as to whether it was false." Chandok, 632 F.3d at 815.  "'Reckless disregard' as to falsity means that the statement is made with a high degree of awareness of the publication's probable falsity or while the defendant in fact entertained serious doubts as to the truth of the publication." Albert, 239 F.3d at 272 (internal punctuation omitted).

"Although actual malice is subjective, a court typically will

infer actual malice from objective facts." <u>Celle</u>, 209 F.3d at 183 (internal quotation marks omitted). "Malice may be proved inferentially because it is a matter of the defendant's subjective mental state, revolves around facts usually within the defendant's knowledge and control, and rarely is admitted." <u>Dalbec v. Gentleman's Companion, Inc.</u>, 828 F.2d 921, 927 (2d Cir. 1987). "Actual malice can be established through the defendant's own actions or statements, the dubious nature of his sources, and the inherent improbability of the story among other circumstantial evidence." <u>Celle</u>, 209 F.3d 183 (internal punctuation omitted). Additionally, "[e]vidence of ill will combined with other circumstantial evidence indicating that the defendant acted with reckless disregard of the truth or falsity of a defamatory statement may also support a finding of actual malice." <u>Id.</u> In sum, "[t]hese facts should provide evidence of negligence, motive[,] and intent such that <u>an accumulation of the evidence and appropriate inferences</u> supports the existence of actual malice." <u>Id.</u> (internal quotation marks omitted).

The plaintiff has not pled facts indicating that the defendant had actual knowledge of the falsity of her statements. However, viewing the pleadings in their entirety, Ms. Connolly has pled sufficient facts from which it may be inferred that Ms. Wood-Smith published the alleged statements with actual malice, including

24

that: the plaintiff proffered "legal advice [that] directly questioned and challenged a fraudulent plan [to assert copyright over paintings] that [the defendant] proposed to implement" (Compl., ¶ 3); the plaintiff proffered "legal advice questioning the lawfulness of certain employment decisions" made by the defendant (Compl., ¶ 3); the plaintiff's legal advice on these matters "undermined [Ms.] Wood-Smith, who is embroiled in litigation . . . to retain her tenure as Independent Trustee of the Trust" (Compl., ¶ 40); the defendant viewed the plaintiff as the ally of Ms. Stone, the testator's daughter and vocal critic of the defendant whom the defendant had recently terminated from her position as Gallery director (Compl., ¶¶ 3, 34); the plaintiff was warned by Ms. Stone "that [Ms.] Wood-Smith would be angry about the legal advice [she] had rendered" (Compl., ¶ 33); "[u]nlike all of [the] [p]laintiff's other invoices to the Gallery," the defendant refused payment on the two invoices for which the plaintiff provided advice adverse to the defendant (Compl., ¶ 35); after the plaintiff filed the fees action to recover her fees, the defendant falsely represented that the Gallery wanted an extension of time to work out an agreement that contemplated paying her fee plus interest and then made no subsequent attempt to settle the action (Compl., ¶¶ 43-44); the plaintiff informed members of the Stone family that the defendant was wasting Trust assets defending the

fees action (Compl., ¶ 43); and less than one month after the defendant represented that she wanted to settle the fees action, her counsel informed the plaintiff that the defendant was asserting a malpractice claim against her, stating, "[Y]ou should not have sued your client" (Compl., ¶ 45).  It may be inferred from the sum of these allegations that Ms. Wood-Smith acted with actual malice in defaming the plaintiff; at a minimum, her claim survives dismissal until discovery has been completed.  See Church of Scientology International v. Behar, 238 F.3d 168, 173 (2d Cir. 2001) ("[R]esolution of . . . actual malice inquiries typically requires discovery."); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986) (holding that summary judgment on issue of actual malice cannot be granted unless "the plaintiff has had a full opportunity to conduct discovery").

Therefore, because the plaintiff has adequately alleged defamation per se, and the defendant cannot show that her alleged statements are protected by any privilege or applicable exception to liability, the motion to dismiss must be denied as to the defamation claim.

C.   Tortious Interference With Prospective Business
     Advantage[6]

"A tortious interference with prospective economic advantage claim is 'very difficult to sustain.'" Emamian v. Rockefeller University, No. 07 Civ. 3919, 2008 WL 4443824, at *7 (S.D.N.Y. Sept. 25, 2008) (citing Kramer v. Pollock-Krasner Foundation, 890 F. Supp. 250, 258 (S.D.N.Y. 1995)).  "It must meet requirements more demanding than those for interference with the performance of an existing contract." Kramer, 890 F. Supp. at 258 (internal punctuation omitted).

To state a claim for tortious interference with business relations, a plaintiff must adequately allege that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." Valley Lane Industries Co., 455 F. App'x at 105 (internal quotation marks omitted).

"Where 'the underlying business relations remained

_____

[6] The plaintiff refers to her claim, alternately, as one for "tortious interference with prospective business advantage," "tortious interference with prospective economic advantage," and "tortious interference with business relations."  These are not distinct causes of action.  See Valley Lane Industries Co. v. Victoria's Secret Direct Brand Management, L.L.C., 455 F. App'x 102, 105 (2d Cir. 2012).

undisturbed,' a claim for tortious interference is 'fatally defective.'" RFP LLC v. SCVNGR, Inc., 788 F. Supp. 2d 191, 198 (S.D.N.Y. 2011) (citing PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc., 818 F.2d 266, 270 (2d Cir. 1987)). "Interference that does not rise to the level of . . . severance of the relationship does not amount to an injury sufficient to make a tortious interference claim." Id. (citing PPX Enterprises, 818 F.2d at 270).

Furthermore, "[a] claim for interference with advantageous business relationships must specify some particular, existing business relationship through which [the] plaintiff would have done business but for the allegedly tortious behavior." Emamian, 2008 WL 4443824, at *7 (citing Kramer, 890 F. Supp. at 258); Solar Travel Corp. v. Nachtomi, No. 00 Civ. 3564, 2001 WL 641151, at *10 (S.D.N.Y. June 8, 2001) ("[I]t is well settled under New York law that a plaintiff must allege that [she] was 'actually and wrongfully prevented from entering into or continuing in a specific business relationship.'" (quoting Korn v. Princz, 226 A.D.2d 278, 279, 641 N.Y.S.2d 283, 283 (1st Dep't 1996)). The pleadings must also specifically identify the business opportunities that were lost as a result of the defendant's alleged conduct. See, e.g., In re Bernard L. Madoff Investment Securities, LLC, 440 B.R. 282, 296-97 (Bankr. S.D.N.Y. 2010) (granting motion to dismiss where

28

claimants pled only that interference resulted in unspecified "lost opportunities"); Solar Travel Corp., 2001 WL 641151, at *10 (statement that the plaintiff "lost prospective business" was insufficient to survive dismissal).

Ms. Connolly has not carried this burden here. The relevant pleadings merely allege the following: "[b]ased on [the plaintiff's] work in rendering legal advice to the Gallery over the preceding sixteen years, [she] had an ongoing business relationship with the Gallery and with members of the Stone family" (Compl., ¶ 73); "[a]s a result [of the defendant's allegedly defamatory statements], [the] [p]laintiff's ongoing business relationship has been harmed" (Compl., ¶ 77); and "the prospects for [the] [p]laintiff being hired by members of the Stone family in the future to render legal advice have been irreparably damaged, causing [the] [p]laintiff damages . . ." (Compl., ¶ 47). Even if the plaintiff were found to have identified the allegedly interfered-with business relationships with adequate specificity, she has neither pled facts suggesting interference that "rise[s] to the level of . . . severance of the relationship," RFP LLC, 788 F. Supp. 2d at 198, nor identified a single business opportunity lost as a result of the alleged interference, Madoff Investment Securities, 440 B.R. at 296; Solar Travel Corp., 2001 WL 641151, at *10. Accordingly, her claim must be dismissed.

29

D.   <u>Stored Communications Act</u>

The SCA provides a cause of action against anyone who "intentionally accesses without authorization a facility through which an electronic communication service is provided" or "intentionally exceeds an authorization to access that facility [] and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system."  18 U.S.C. § 2701(a).[7]  A statutory exception to liability is contained in Section 2701(c), which exempts "conduct authorized . . . by the person or entity providing a wire or electronic communications service."  18 U.S.C. § 2701(c).   M s . Wood-Smith argues, among other things, that because the plaintiff has pled that exhibit-E -- the entity providing the electronic communications service -- authorized Ms. Wood-Smith's access to its server, she is entitled to the authorization defense provided under Section 2701(c).  (Def. Memo. at 11-12)   She further argues that, as the plaintiff does not allege that Ms. Wood-Smith obtained exhibit-E's authorization "by means of coercion or improper legal

---

[7] Section 2707 of the SCA provides a private cause of action for "any . . . person aggrieved" by a violation of Section 2701, which is a criminal statute.  18 U.S.C. § 2707.  Accordingly, the provisions of the SCA must be strictly construed.  <u>See</u> <u>Reynolds v. United States</u>, __ U.S. __, 132 S. Ct. 975, 982 (2012); <u>Scheidler v. National Organization for Women, Inc.</u>, 537 U.S. 393, 408-09 (2003); <u>United States v. Lanier</u>, 520 U.S. 259, 266 (1997).

compulsion," her conduct is protected by the Section 2701(c) defense. (Def. Memo. at 12).

The defendant is correct. The facts alleged by the plaintiff indicate that Ms. Wood-Smith's access, whether to exhibit-E's server or the e-mails themselves, was authorized by exhibit-E. The fact that exhibit-E sought and obtained indemnification for authorizing the access is of no consequence. Moreover, the plaintiff does not plead any cognizable limitation to the Section 2701(c) defense by showing, for example, that the authorization was obtained by fraudulent or deceitful conduct, <u>Theofel v. Farey-Jones</u>, 359 F.3d 1066, 1072-73 (9th Cir. 2004) (denying authorization defense where defendant served patently overbroad and illegal subpoena on internet service provider ("ISP") to obtain access to stored e-mails, likening the subpoena to a trespasser "who procures consent by exploiting a known mistake that relates to the essential nature of his access"); <u>Crow v. Uintah Basin Electronic Telecommunications</u>, No. 2:09-CV-1010, 2010 WL 5069852, at *3-4 (D. Utah Dec. 6, 2010) (finding that plaintiff stated SCA claim by pleading that defendant obtained consent of communication service provider to access text messages through fraud), or under duress, <u>Pietrylo v. Hillstone Restaurant Group</u>, No. 06-5754, 2008 WL 6085437, at *4 (D.N.J. July 25, 2008) (denying summary judgment to employer where employee alleged that she provided private social

31

networking site password to employer under fear of adverse employment action, noting that, "[i]f her consent was only given under duress, then the [d]efendants were not 'authorized' under the [SCA]"). Therefore, the authorization provided by exhibit-E constitutes a complete defense to liability.[8]   See, e.g., Cornerstone Consultants, Inc. v. Production Input Solutions, L.L.C., 789 F. Supp. 2d 1029, 1052 (N.D. Iowa 2011) (reading "[Section] 2701(c) as excepting from [the SCA's] protection all searches, of whatever scope, authorized by service providers.");

---

[8]   Ms. Connolly's most compelling argument against the applicability of the Section 2701(c) defense posits that, "[w]here a person has a reasonable expectation of privacy in their emails, [as when, for example, the emails are protected by attorney-client privilege or an employer does not enforce an e-mail monitoring policy,] consent of the sender or receiver of the emails is required to constitute 'authorization' to access those emails." (Pl. Memo. at 12).   However, none of the decisions cited by the plaintiff have found Section 2701 liability for an individual defendant who is not a service provider where its allegedly improper access to e-mails has been authorized by a third-party non-defendant service provider.   See Pure Power Boot Camp., Inc. v. Warrior Fitness Boot Camp, LLC, 587 F. Supp. 2d 548, 559-62 (S.D.N.Y. 2008) (dealing with conduct of employer alleged to have exceeded authorization provided by user of service); Penrose Computer Marketgroup, Inc. v. Camin, 682 F. Supp. 2d 202, 208-12 (N.D.N.Y. 2010) (dealing with conduct of employee alleged to have exceeded access authorized by employer); Global Policy Partners, LLC v. Yessin, 686 F. Supp. 2d 631, 635-37 (E.D. Va. 2009) (same); Viacom International Inc. v. Youtube, Inc., 253 F.R.D. 256, 265 (S.D.N.Y. 2008) (analyzing conduct of service provider defendant under Section 2702).   The plaintiff cites to no case, and in fact, I have located none, where a non-service provider defendant has been precluded from raising the Section 2701(c) defense (absent an applicable limitation) on facts even remotely analogous to those present here.

<u>Garcia v. Haskett</u>, No. C 05-3754 CW, 2006 WL 1821232, at *5 (N.D. Cal. June 30, 2006) (holding that, although defendant may have illegally accessed the facility of third-party non-defendant ISP by accessing plaintiff's e-mail account, plaintiff nonetheless failed to state SCA claim because she did not allege that defendant's access of her stored e-mails "was conduct unauthorized by" the ISP); <u>see also</u> <u>Oce North America, Inc. v. MCS Services, Inc.</u>, 748 F. Supp. 2d 481, 487 (D. Md. 2010) (plaintiff failed to state claim under Computer Fraud and Abuse Act ("CFAA") where no allegation that "person with the requisite authority[] denied access such that [d]efendants' access was unauthorized or in excess of its authorization."); <u>AtPac, Inc. v. Aptitude Solutions, Inc.</u>, No. CIV. 2:10294, 2010 WL 1779901, at *6 (E.D. Cal. April 29, 2010) (finding no civil liability under CFAA where plaintiff did "not allege the sort of subterfuge this court believes is necessary to find a defendant not party to a license agreement civilly liable . . . where the licensee grants it authority to access information in violation of the license agreement."); <u>SecureInfo Corp. v. Telos Corp.</u>, 387 F. Supp. 2d 593, 609 (E.D. Va. 2005) (holding that, where software licensee gave defendants access to server containing plaintiff's materials in violation of licensing agreement between plaintiff and licensee, "under [licensee's] grant of authority to the defendants, they were entitled to obtain the information on the

server" under CFAA). Therefore, the plaintiff's SCA claim must be dismissed.

Conclusion

For the reasons stated above, I recommend that the defendant's motion to dismiss be granted with respect to the plaintiff's SCA and tortious interference claims and denied as to the defamation claim. The Court retains diversity jurisdiction over the plaintiff's defamation claim. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of Court, with extra copies delivered to the chambers of the Honorable Deborah A. Batts, Room 2510, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

James C. Francis IV
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          May 14, 2012

34

Copies mailed this date to:

Kerry E. Connolly, Esq.
The Law Office of Kerry E. Connolly, Esq.
One Battery Park Plaza, 32nd Floor
New York, New York  10004

Laurie Berke-Weiss, Esq.
Berke-Weiss & Pechman LLP
488 Madison Avenue, 11th Floor
New York, New York 10022