```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
KERRY E. CONNOLLY, ESQ.,             :   11 Civ. 8801 (DAB) (JCF)
                                     :
             Plaintiff,              :        REPORT AND
                                     :       RECOMMENDATION
     - against -                     :
                                     :
LELIA MARTIN WOOD-SMITH,             :
                                     :
             Defendant.              :
- - - - - - - - - - - - - - - - - - -:
```
TO THE HONORABLE DEBORAH A. BATTS, U.S.D.J.:

Kerry E. Connolly brings this action asserting claims against Defendant Lelia Martin Wood-Smith for defamation and tortious interference with prospective business advantage.  Ms. Wood-Smith now moves to dismiss the tortious interference claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the following reasons, the defendant's motion should be granted.

Background

For sixteen years, Ms. Connolly was outside counsel to the Allan Stone Gallery (the "Gallery"), providing legal advice on a variety of subjects relating to the sale of fine art.  (Second Amended Complaint ("2d Am. Compl."), ¶ 10).  This professional relationship grew out of her close personal friendship with the director of the Gallery at the time, Claudia Stone.  (2d Am. Compl., ¶¶ 11-12).  Allan Stone, Ms. Stone's father and the founder of the Gallery, passed away in 2006.  (2d Am. Compl., ¶¶ 10, 13).

His estate, including the Gallery and its inventory of art, was put into a trust, and Ms. Wood-Smith was appointed the Independent Trustee.  (2d Am. Compl., ¶¶ 14-15).

The plaintiff alleges that as part of a larger pattern of fiduciary breaches and self-dealing, Ms. Wood-Smith "concocted a scheme by which she intended to falsely claim that the Trust owned the copyright in some or all of the approximately 15,000 works of art in the Trust inventory, and to sell copies of the works of art in various forms (posters, postcards, etc.)."  (2d Am. Compl., ¶ 26).  As director of the Gallery, Ms. Stone asked the plaintiff to advise her on the copyright status of several pieces in the Gallery's collection (2d Am. Compl., ¶¶ 27-29), and the plaintiff's advice was contrary to the position taken by the defendant (2d Am. Compl., ¶¶ 29-30, 32).  In an unrelated employment matter, the plaintiff again provided legal advice that ran counter to Ms. Wood-Smith's proposed course of conduct.  (2d Am. Compl., ¶¶ 34-35).  This contributed to a growing "power struggle" between Ms. Stone and Ms. Wood-Smith, which became "openly antagonistic" by 2010.  (2d Am. Compl., ¶¶ 3, 23).  In early 2011, Ms. Stone was terminated from her position as Gallery director, allegedly in order to remove any opposition to Ms. Wood-Smith's scheme.[1]  (2d Am. Compl., ¶¶ 34-

---

[1] The parties dispute whether Ms. Stone was fired or left in order to open a competing gallery.  For the purposes of deciding

39).  Ms. Connolly tendered her letter of resignation shortly thereafter.  (2d Am. Compl., ¶ 40; Reply Memorandum of Law in Support of Defendant Lelia Martin Wood-Smith's Partial Motion to Dismiss at 7 n.8).  As Ms. Wood-Smith was now her primary client contact and "rejected any advice that did not suit her goals," Ms. Connolly believed she was ethically compelled to resign.  (2d Am. Compl., ¶ 40).

Following Ms. Connolly's resignation, the Gallery delayed payment of certain legal fees to her, and she filed suit to recover them.  (2d Am. Compl., ¶¶ 41-43).  Ms. Stone informed her that Ms. Wood-Smith sent an e-mail to the Stone family stating that the plaintiff's legal advice had been wrong and "cost the Trust hundreds of thousands of dollars."  (2d Am. Compl., ¶¶ 43-44).  The Gallery then told Ms. Connolly it was going to file a malpractice suit against her.  (2d Am. Compl., ¶ 54).  The plaintiff contends that these events demonstrate a course of misconduct designed to interfere with her prospective business relations with the Gallery, with Gallery staff members, and with the other Stone sisters.  (2d Am. Compl., ¶ 74).

This is the plaintiff's second amended complaint.  At the time her first amended complaint was dismissed, Ms. Connolly was allowed

---

this motion, the facts as alleged in the plaintiff's pleadings are taken as true.  (2d Am. Compl., ¶ 39).

to replead her tortious interference claim if she could "allege and identify a specific, existing business relationship that was allegedly interfered with, the business opportunities that were lost as a result of [the] Defendant's alleged conduct, and facts suggesting interference that rises to the level of severance of the relationship." Connolly v. Wood-Smith, No. 11 Civ. 8801, 2013 WL 1285168, at *4 (S.D.N.Y. March 28, 2013).

Discussion

    A.  Legal Standard

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 94 (2007); DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 110-11 (2d Cir. 2010). A complaint need not contain detailed factual allegations, but it must contain more than mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)). Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the requirements of Rule 8 of the Federal Rules of Civil Procedure. Id. at 679 (citing Fed. R. Civ. P.

8(a)(2)).  When ruling on a motion to dismiss, the task before a court "'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004)).

      B. Tortious Interference with Prospective Business Relations

Under New York law, a claim for tortious interference with a prospective business relation must allege (1) that a business relationship existed between the plaintiff and a third party; (2) that the defendant was aware of the relationship and intentionally interfered; (3) that the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or wrongful means; and (4) that these acts injured the relationship between the plaintiff and the third party.  See Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006) (citing Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003)).  This cause of action has a "limited scope."  Piccoli A/S v. Calvin Klein Jeanswear Co., 19 F. Supp. 2d 157, 168 (S.D.N.Y. 1998).  "[T]he defendant's interference must be direct.  The defendant must target some activities toward the third party and convince the third party not to enter into a business relationship with the plaintiff."  In re Refco Inc.

Securities Litigation, 826 F. Supp. 2d 478, 520 (S.D.N.Y. 2011). "'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." Guard-Life Corp. v. S. Parker Hardware Manufacturing Corp., 50 N.Y.2d 183, 191, 428 N.Y.S.2d 628, 632 (1980); see also Valley Lane Industries Co. v. Victoria's Secret Direct Brand Management, LLC, 455 F. App'x 102, 105-06 (2d Cir. 2012).

To sustain her claim, the plaintiff is first required to identify a "particular, existing business relationship through which [she] would have done business but for the allegedly tortious behavior." Emamian v. Rockefeller University, No. 07 Civ. 3919, 2008 WL 4443824, at *7 (S.D.N.Y. Sept. 25, 2008) (quoting Kramer v. Pollock-Krasner Foundation, 890 F. Supp. 250, 258 (S.D.N.Y. 1995)) (emphasis in original). "[S]ituations . . . in which there was an ongoing business relationship between the plaintiff and a third party, but no existing contractual arrangement," satisfy this element. Sterling Interiors Group, Inc. v. Haworth, Inc., No. 94 Civ. 9216, 1996 WL 426379, at *25 (S.D.N.Y. July 30, 1996) (citing Volvo North America Corp. v. Men's International Professional Tennis Council, 857 F.2d 55, 74 (2d Cir. 1988)); see also Hannex Corp. v. GMI, Inc., 140 F.3d 194, 205 (2d Cir. 1998) (demonstrating "a continuing business or other customary relationship not

6

amounting to a formal contract" is sufficient) (quoting Restatement (Second) of Torts § 766B cmt. c (1979)).

Ms. Connolly has sufficiently pled an existing relationship with the Allan Stone Gallery, based on her 16-year professional relationship with the Gallery and the legal advice on copyright and employment issues she rendered during the period of alleged interference. (2d Am. Compl., ¶¶ 10-12, 29, 32, 34, 36). In addition, Ms. Connolly identifies one specific matter -- "the David Beck litigation" -- that she would have worked on had she not been forced to resign. (2d Am. Compl., ¶¶ 19, 56); see Constantin Associates v. Kapetas, No. 601305/2006, 2007 WL 4294732, at *2 (Sup. Ct. N.Y. Cnty. Dec. 6, 2007) (requiring identification of a specific lost contract or business opportunity).

The same is not true of any relationship with Stone family members other than Claudia Stone or with other Gallery staff. The complaint states only that "members of the Stone family and [] staff members of the Gallery [] would turn to [the] Plaintiff when they had personal legal needs" but provides no factual assertions to bolster this conclusory statement. (2d Am. Compl., ¶ 71). Without a showing of "a prospective relationship between the plaintiff and a third party that would have proceeded to some sort of binding, if not contractual, relationship but for the defendant's interference," the pleading is too vague to establish

7

the required business relationship.  Oxyn Telecommunications, Inc. v. Onse Telecom, No. 01 Civ. 1012, 2003 WL 22271224, at *6 (S.D.N.Y. Sept. 30, 2003) (quoting D'Andrea v. Rafla-Demetrious, 3 F. Supp. 2d 239, 251 (E.D.N.Y. 1996), aff'd, 146 F.3d 63 (2d Cir. 1998)).  Nor has Ms. Connolly specified any particular legal work that she would have done for the Stone family or other Gallery staff but for Ms. Wood-Smith's interference.  See In re Bernard L. Madoff Investment Securities, LLC, 440 B.R. 282, 296-97 (Bankr. S.D.N.Y. 2010) (granting motion to dismiss where claimants pled only that interference resulted in unspecified "lost opportunities"); Solar Travel Corp. v. Nachtomi, No. 00 Civ. 3564, 2001 WL 641151, at *10 (S.D.N.Y. June 8, 2001) (statement that plaintiff "lost prospective business" insufficient to support claim).

Further, because "[t]he first element of this claim requires [the] plaintiff to have had a business relationship with a third party at the time of [the] defendant's interference," any conduct by the defendant that took place following Ms. Connolly's resignation cannot support her claim of tortious interference. Henneberry v. Sumitomo Corp. of America, 415 F. Supp. 2d 423, 468 (S.D.N.Y. 2006) (emphasis in original); see also AIM International Trading, LLC v. Valcucine S.P.A., No. 02 Civ. 1363, 2003 WL 21203503, at *6 (S.D.N.Y. May 22, 2003) ("[T]he relationship must

be in existence at the time of the interference."). Although the complaint states that Ms. Wood-Smith sent the allegedly defamatory e-mail "in order to interfere" with Ms. Connolly's business relationship with the Gallery, there was no relationship existing at that time. (2d Am. Compl., ¶¶ 3, 43-44).

The other conduct specified by Ms. Connolly -- the non-payment of legal fees and the malpractice suit -- would be insufficient even if it took place while Ms. Connolly was working for the Gallery. Because it was directed at Ms. Connolly herself, as opposed to the Gallery, it cannot support a claim for tortious interference. See Carvel Corp. v. Noonan, 3 N.Y.3d 182, 192, 785 N.Y.S.2d 359, 363 (2004); Oxyn Telecommunications, Inc., 2003 WL 22271224 at *5 (dismissing tortious interference claim where actions were targeted at plaintiff and not third party); Fonar Corp. v. Magnetic Resonance Plus, Inc., 957 F. Supp. 477, 482 (S.D.N.Y. 1997).

Thus, only the defendant's conduct before Ms. Connolly's resignation -- Ms. Wood-Smith's copyright "scheme" and acts of "overreaching and self-dealing" -- satisfy the first element of a tortious interference claim. (2d Am. Compl., ¶¶ 26, 16). To meet the second element, the interference must be both direct and intentional. See Randolph Equities, LLC v. Carbon Capital, Inc., 648 F. Supp. 2d 507, 523 (S.D.N.Y. 2009). "[T]he defendant must

direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff." Fonar, 957 F. Supp. at 482.  Ms. Connolly claims that her resignation was "collateral damage from [the defendant's] fight with the [Stone] family."  (2d Am. Compl., ¶ 2).  But "[i]t is axiomatic that, in order to prevail on this claim, the [plaintiff] would have to show that the [defendant] intentionally caused the [Gallery] not to enter into a contractual relation with [her]." G.K.A. Beverage Corp. v. Honickman, 55 F.3d 762, 768 (2d Cir. 1995).  The complaint "must allege that the defendant <u>intended</u> to interfere with the plaintiff's business or contractual relations with another party."  B & M Linen, Corp. v. Kannegiesser, USA, Corp., 679 F. Supp. 2d 474, 485 (S.D.N.Y. 2010) (emphasis in original); see also Watson v. Riptide Worldwide, Inc., No. 11 Civ. 0874, 2012 WL 383946, at *7 (S.D.N.Y. Feb. 7, 2012) (dismissing complaint where interference was not intentional but resulted from alleged negligence).  Allegations of "[l]ost economic advantage" that is "only a collateral effect" of culpable conduct are insufficient to support the claim.  In re Refco, 826 F. Supp. 2d at 522.

     Thus, even the conduct specified in the complaint that meets the first element of tortious interference with prospective economic advantage fails to satisfy the second.  Therefore, this

10

cause of action should be dismissed.

Conclusion

For the reasons stated above, I recommend that the defendant's motion to dismiss the tortious interference claim (Docket no. 49) be granted. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of Court, with extra copies delivered to the chambers of the Honorable Deborah A. Batts, Room 2510, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

*[signature]*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         Oct. 29, 2013

Copies mailed this date to:

Kerry E. Connolly, Esq.
The Law Office of Kerry E. Connolly, Esq.
One Battery Park Plaza, 32nd Floor
New York, NY 10004

James T. Sandnes, Esq.
Boundas, Skarzynski, Walsh & Black, LLC
One Battery Park Plaza, 32nd Floor
New York, NY 10004

Jeremy H. Temkin, Esq.
Adam L. Pollack, Esq.
Morvillo Abramowitz Grand Iason & Anello P.C.
565 Fifth Avenue
New York, NY 10017